UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 2:18-cr-113 |
| | ) | |
| ADONIS PERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on Defendant's Second Motion to Suppress on the Superseding Indictment. (ECF No. 33). In his motion, Defendant challenges the introduction of evidence obtained from an alleged unconstitutional search of his cell phone. Defendant claims law enforcement obtained the evidence via a warrantless search in violation of his Fourth Amendment rights.

The matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation under 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b).[1] On June 28, 2019, the court held a hearing at which it heard evidence and argument on this and an additional motion. See June 28, 2019 Hr'g Tr. (ECF No. 96). The parties submitted supplemental briefing on

---

[1] This motion was filed on October 3, 2018 and referred on November 13, 2018. Referral Order (ECF No. 49). The court has held it in abeyance since that time pending resolution of several motions related to Defendant's representation and completion of a psychiatric evaluation of Defendant.

August 9, 2019. After consideration of all materials submitted, this Report concludes that although Defendant maintained a legitimate Fourth Amendment interest in the contents of the cell phone, law enforcement obtained valid consent to search it. The undersigned therefore recommends the court DENY Defendant's Second Motion to Suppress.

## I. Factual Background

The underlying criminal charges in this case stem from a traffic stop that occurred on December 18, 2017. Police stopped a Ford Explorer in which Defendant and Ms. Beatrice McCarr were the only two occupants.[2] After recovering two firearms from the vehicle, the officers arrested Defendant. They then questioned McCarr and took her written statement before permitting her to drive away from the scene in the Explorer, which still contained Defendant's cell phone ("the HTC phone"). Second Mot. Suppress Ex. 1 ("Matthews Aff."), ¶ 16 (ECF No. 33-1). Police transported Defendant away from the scene, and he has been in custody ever since. McCarr returned to her home in Georgia. Id.

During the time Defendant has been incarcerated, McCarr occasionally used the HTC phone to send messages and take calls.

---

[2] The details of the stop are set out in the Report & Recommendation on Defendant's First Motion to Suppress but are not pertinent to the present motion. See R. & R. 2-7 (ECF No. 48).

On January 1, 2018, McCarr sent several messages from the HTC phone. One said, "Your brother said he would like your support Thursday at 11:30 he having his bond & hearing and he want you to come but u have to be there a hour early."[3] Def.'s Second Mot. Suppress with Mem. Supp. 1-2 (ECF No. 33). Another read, "His hearing is Thursday at 11:30 but u have to be there earlier he would like y'all support." Id. at 2. On December 17, 2017, McCarr responded to a message on the HTC phone, saying that Defendant was in jail, identifying herself as his wife, and saying that she had his phone. Id. McCarr used the HTC phone to take jail calls from Defendant, in part because the local number associated with the phone made the calls cheaper. Hr'g Tr. 75. In a March 14, 2018 call, Defendant told McCarr to carry the HTC phone with her, to "[l]eave it in the car or something," even though McCarr had her own phone which she carried with her. Second Mot. Suppress 2-3. In conversations with Defendant, McCarr routinely referred to the HTC phone as "your phone," referring to Defendant. Hr'g Tr. 86-87.

McCarr knew the password to the HTC phone and had access to its contents. Hr'g Tr. 71. She used the phone for her own personal communications at least some of the time. Hr'g Tr. 70, 76. In a

---

[3] Messages and phone calls quoted in this Report are reproduced identical to the original unless otherwise indicated by bracketed modification.

March 14, 2018 jail call, McCarr told Defendant that she had viewed pictures of the two of them on the HTC phone. Id. at 72, 74. Defendant responded with laughter. Id. at 74. In a May 6, 2018 call, Defendant asked McCarr to continue holding onto his belongings, including the HTC phone, and McCarr agreed. Matthews Aff. ¶ 18.

The government produced evidence in the form of several jail calls to McCarr or others through which it says Defendant attempted to tamper with McCarr's statements or future testimony in any proceedings against him. On January 14, 2018, Defendant called McCarr on the HTC phone and asked her to put another person on the line, identified as "Juice." Gov't's Resp. to Second Mot. Suppress Ex. 1 ("Jail Call Recordings") (ECF No. 34-1). Defendant told Juice to "get [McCarr] to write a letter saying that ... she lied" to the police and to get it notarized. Id. In another call later that day, Defendant told McCarr to say that the police had coerced her into giving a statement as she had by threatening to send her to jail. Id. Defendant told McCarr to tell investigators that the guns recovered from the Explorer did not belong to him. Id.

The next day, Defendant called McCarr on the HTC phone and told her to tell the prosecutor that she no longer wanted to testify in Defendant's case. Id. Defendant instructed McCarr to record the call and to send the recording to his lawyer. Id. He

again said that she should claim that police coerced her into making her statement. Id.

In June 2018, ATF Task Force Officer Justin Matthews subpoenaed McCarr to testify at a July 11 federal grand jury proceeding on federal firearms charges against Defendant. Matthews Aff. ¶ 19. While the subpoena was only for her physical presence, Hr'g Tr. 92, Officer Matthews also asked McCarr to bring the HTC phone with her when she came to Norfolk, Matthews Aff. ¶ 19. McCarr agreed to do so, stating that she no longer needed the phone for personal use since her own phone had been reactivated with more minutes. Hr'g Tr. 75-76. When McCarr arrived on July 10, she gave the phone to Officer Matthews and unlocked it using the password. Matthews Aff. ¶ 23. McCarr acknowledged using the phone to communicate with Defendant in jail and his attempts to convince her not to testify in his criminal proceedings. Id. Both McCarr and Officer Matthews repeatedly referred to the HTC phone as "Perry's," referring to Defendant. Id. ¶¶ 19, 23.[4]

Once Officer Matthews had possession of the phone, he verified that the password was able to unlock it, turned it off, and

---

[4] The circumstances of McCarr's alleged consent to the phone search derive primarily from Agent Matthews's testimony at the June 28 hearing. The government did not subpoena McCarr for that hearing. Hr'g Tr. 90.

prepared an application for a warrant to search it. Hr'g Tr. 76-77. The reviewing United States Magistrate Judge denied the search warrant application. <u>See</u> <u>In re: Sealing of One Application &</u> <u>Affidavit in Support of Request for a Search Warrant</u>, No. 2:18ms16 (E.D. Va. Aug. 17, 2018).[5] Hr'g Tr. 80. Within the next two to three days, Officer Matthews returned to the Assistant United States Attorney who, apparently after reviewing Fourth Circuit caselaw and consulting with other government lawyers, concluded that they did not in fact need a warrant to search the HTC phone. Hr'g Tr. 88. Law enforcement officials eventually conducted a forensic search and recovered, among other data, several photographs and text messages which are now the subject of this suppression motion. Hr'g Tr. 81.

## II. **Standard of Review**

Motions to suppress present mixed questions of law and fact that are properly decided by the court without a jury. <u>United States v. Stevenson</u>, 396 F.3d 538, 541 (4th Cir. 2005); Fed. R. Crim. P. 12(b)(3)(C). In deciding a preliminary question of whether evidence is admissible, the court is not bound by evidence rules except those governing privilege. Fed. R. Evid. 104(a).

---

[5] A copy of the Order is docketed in this case at ECF No. 33-2.

### III. Analysis

**A.   Fourth Amendment Principles**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Its protections are limited, however, to those places or things in which a person has a "legitimate expectation of privacy." Rakas v. Illinois, 439 U.S. 128, 143 (1978) (citing Katz v. United States, 389 U.S. 347, 353 (1967)). The question of whether an asserted privacy interest is reasonable has two components: subjective and objective. The defendant must first demonstrate an "actual expectation of privacy"—a genuine effort to preserve something as private. See Bond v. United States, 529 U.S. 334, 338 (2000). Second, that expectation of privacy must be "one that society is prepared to recognize as reasonable." Id. (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)). The defendant bears the initial burden of proving he or she had a legitimate privacy interest in the invaded place. United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011).

The "ultimate touchstone" for evaluating the legality of a search under the Fourth Amendment is "reasonableness." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Generally, law enforcement officials must obtain a judicial warrant before undertaking a search to discover evidence of criminal wrongdoing.

_Verona Sch. Dist. 47J v. Acton_, 515 U.S. 646, 653 (1995). Warrantless searches are reasonable only if they fall within a specific exception to the warrant requirement. _Riley v. California_, 573 U.S. 373, 382 (2014). The government bears the burden of demonstrating that a warrantless search is reasonable. _United States v. McGee_, 736 F.3d 263, 269 (4th Cir. 2013).

**B.    Defendant's Fourth Amendment Interest in the HTC Phone**

The government first contends that Defendant lacked a legitimate privacy interest in the HTC phone, thus removing this matter entirely from the ambit of the Fourth Amendment. _See_ _United States v. Davis_, 690 F.3d 226, 241 (4th Cir. 2012) ("When there is no reasonable expectation of privacy, the Fourth Amendment is not implicated."). Defendant asserts two theories to support his privacy interest. The first is based on the _Katz_ "reasonable expectation of privacy" test as described above. He describes the other as based on "the common-law trespassory test," as applied in _Jones_. Def.'s Second Mot. Suppress 5-6 (quoting _United States v. Jones_, 565 U.S. 400, 409 (2012)).

The _Jones_ test is a poor fit here. In _Jones_, government agents attached a GPS tracking device to the underside of the petitioner's vehicle while it was in a public parking lot and used it to monitor the vehicles movements for 28 days. 565 U.S. at 403. The Court held that such actions constituted a Fourth Amendment "search," notwithstanding the petitioner's lack of "reasonable expectation

of privacy" in his publicly visible location. Id. at 404, 406. Jones thus reiterates the Fourth Amendment's applicability when the government "physically occupie[s] private property for the purpose of obtaining information." Id. at 404.

Courts have largely rejected efforts to expand the trespassory test applied in Jones, mostly because the Katz test covers a greater variety of contexts. Indeed, the Supreme Court devised the reasonable expectation of privacy test in Katz largely because the narrow trespassory test failed to encompass all those instances in which people expect to be free from government intrusion. See Katz, 389 U.S. at 351 ("[T]he Fourth Amendment protects people, not places."); see also Jones, 565 U.S. at 404-09 (describing Katz as a deviation that added to, rather than supplanted, the historical "property-based approach" to the Fourth Amendment). The two tests are not necessarily mutually exclusive, but neither are they strict alternatives available in all cases. See Davis, 690 F.3d at 241 n.23 (limiting applicability of Jones to cases involving physical intrusion on private property).

Stretching Jones is ultimately unnecessary, as this Report concludes Defendant had a legitimate expectation of privacy under the Katz test. The Supreme Court has acknowledged the substantial privacy implications of ubiquitous cell phone usage today. See Riley, 573 U.S. at 393-97 (discussing the quantity and breadth of personal data accessible through modern cell phones); see also

State v. Granville, 423 S.W.3d 399, 405-406 & nn.16-17 (Tex. Crim. App. 2014) (collecting cases treating individual privacy interests in cell phones as "indisputable"). The password lock on the phone further reinforces Defendant's legitimate privacy interest, see State v. K.C., 207 So. 3d 951, 955 (Fla. Dist. Ct. App. 2016), likely beyond what is required by the Fourth Amendment, see State v. Peoples, 378 P.3d 421, 426 (Ariz. 2016) ("Cell phones are intrinsically private, and the failure to password protect access to them is not an invitation for others to snoop.).

Furthermore, Defendant did not forfeit that interest by permitting McCarr access to the phone. As a general matter, a person is not required to exclude all others from an area to maintain a reasonable privacy interest. See Mancusi v. DeForte, 392 U.S. 364, 369 (1968) (reasoning that respondent retained a privacy interest in a shared office); United States v. Torch, 609 F.2d 1088, 1091 (4th Cir. 1979) ("A person need not have exclusive use of an area to have a reasonable expectation of privacy there."). The Fourth Amendment does not demand such absolute secrecy. See O'Connor v. Ortega, 480 U.S. 709, 730 (1987) (Scalia, J., concurring in the judgment) ("It is privacy that is protected by the Fourth Amendment, not solitude."). Although Defendant permitted McCarr to access the HTC phone, merely "entrusting [one's] possessions to one other person" should not place them

10

outside the Fourth Amendment. <u>United States v. Most</u>, 876 F.2d 191, 198 (D.C. Cir. 1989).

In response, the government cites to the unpublished Fourth Circuit case of <u>Casella v. Borders</u>, 404 F. App'x 800 (4th Cir. 2010). <u>Casella</u> involved a civil rights claim by a woman who sued police after they viewed intimate photos on her cell phone. The court held that as a § 1983 plaintiff, she had no Fourth Amendment rights in the phone because she had lent it to her then-boyfriend for nearly two months before police seized it from him during a search incident to arrest. <u>Id.</u> at 801. The court reasoned that the plaintiff had no legitimate expectation of privacy because she "allege[d] no facts indicating she exercised a right to control the cell phone or its contents after giving the phone" to her boyfriend. <u>Id.</u> at 803.

<u>Casella</u> is unpersuasive in this case for several reasons. First, it predates <u>Riley</u>'s implicit elevation of cell phone data to a place of prominence under the Fourth Amendment. Second, its property-based approach sidesteps application of the better-suited <u>Katz</u> test, which more effectively captures individuals' privacy interests in the content of their phones.[6] Finally, it would impose

---

[6] Considering her claim also alleged intentional infliction of emotional distress, the plaintiff in <u>Casella</u> was likely far less concerned about police having physical possession of the phone

too absolute a rule on shared cell phone access, one that risks neutralizing the Fourth Amendment in many common scenarios. Cf. O'Connor, 480 U.S. at 730 (Scalia, J., concurring in the judgment) ("A man enjoys Fourth Amendment protection in his home, for example, even though his wife and children have the run of the place."). This is not to say the degree of Defendant's control over the phone is unimportant. However, negating Defendant's privacy interest here because he shared his phone with one other person risks substantial collateral damage to Fourth Amendment rights. See Second Mot. Suppress 15-16 (offering common examples of shared access to electronic devices). This makes it a poorly suited—and ultimately unnecessary—means of resolving the issue.

## C.   Government's Justification for Warrantless Search

Accepting that Defendant retained some Fourth Amendment interest in the HTC phone, it is the government's burden to identify a specific exception to justify its warrantless search. The government contends that McCarr, who possessed the phone and had access to its contents for months before turning it over to Agent Matthews, validly consented to the search. Defendant disputes both that McCarr had authority to consent to the search

---

itself than she was about their viewing and sharing its private contents. See 404 F. App'x at 801-802.

and the factual claim that she did so voluntarily. This Report concludes that McCarr had at least apparent authority to consent to the search and that her consent was valid.

Voluntary consent to search is an exception to the warrant requirement. United States v. Ortiz, 669 F.3d 439, 445 (4th Cir. 2012). A third party may consent to a search of property if that person possesses "common authority over or other sufficient relationship to the ... effects sought to be inspected." United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). Establishing "common authority ... requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" Id. (quoting Matlock, 415 U.S. at 171 n.7).

1.   McCarr's Authority to Consent to the Phone Search

Authority to consent to a search can be either actual or apparent. Id. at 555; see also Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (holding that warrantless search of home conducted with permission of someone that police reasonably believed to be a resident did not violate Fourth Amendment). Apparent authority is measured against an objective standard: whether the facts available to an officer at the time permitted a reasonable conclusion that the consenting party had authority over the premises or items. See Rodriguez, 497 U.S. at 188-89; Webb v. Brawn, 625 F. App'x 191, 193 (4th Cir. 2015) (per curiam)

13

(considering the "totality of the circumstances" in apparent authority evaluation).

As an initial matter, the government's unsuccessful attempt to secure a search warrant for the HTC phone does not automatically invalidate the later consent search. At the motion hearing, Agent Matthews testified that he applied for a search warrant to "err on the side of caution." Hr'g Tr. 89. Although the reviewing Magistrate Judge denied the warrant application, that did not preclude officers from relying on a separate basis to justify the search. See United States v. Gearhart, 326 F.2d 412, 413-14 (4th Cir. 1964) (rejecting argument that "misconceived reliance by officers upon an unnecessary warrant, which later is found invalid, precludes independent justification of an arrest or search"); United States v. Turner, 23 F. Supp. 3d 290, 303 n.17 (S.D.N.Y. 2014) (upholding search by consent after government disclaimed reliance on improperly obtained warrant).

The court must therefore consider whether McCarr had either actual or apparent authority to consent to the phone search. Examining the entire record, I find that she had at least apparent authority. The following facts were apparent to Agent Matthews at the time he requested McCarr turn over the phone to him: McCarr had maintained possession of the phone for approximately seven months, spending much of that time at her home in Georgia, far removed from Defendant. During that time, she used it to

14

communicate with Defendant, Defendant's family and acquaintances, and her own family and friends in the Norfolk area. She knew the password to the phone and had access to its contents and functionality. And while Defendant argues that her "right" to use the phone was limited by some agreement with Defendant, there is no evidence in the record demonstrating any such restriction in practice, such that it would have been apparent to Agent Matthews or anyone else. An unknowing observer would likely have concluded that the phone belonged to McCarr alone. These facts support a reasonable conclusion that McCarr had full authority and control over the phone. See, e.g., United States v. Gardner, 887 F.3d 780, 784 (6th Cir. 2018) (assuming in dicta that minor who used cell phone to communicate with undercover police officer, had it in her possession during police sting, knew the passcode, and gave it to officers had apparent authority to consent to search); United States v. Thomas, 818 F.3d 1230, 1241 (11th Cir. 2016) (finding apparent authority to consent to computer search by person who had access to it, knew the password, and had recently used it); cf. Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir. 2001) (recognizing that lack of access to password-protected files cuts against authority to consent to search as third party). The situation present here is readily distinguishable from Defendant's cited cases, which involved clear limitations on the consenting party's access. Cf. United States v. Corral, 339 F. Supp. 2d 781, 791-92

(W.D. Tex. 2004) (holding part-time domestic housekeeper lacked authority to consent to home search because she "enjoyed only limited access to the residence and was present for specific and limited purposes only"); Commonwealth v. Silo, 389 A.2d 62, 64 (Pa. 1978) (finding no authority to consent to search by person holding but not using appellant's property).

That McCarr had at least apparent authority to consent to the search is fully compatible with Defendant's continued Fourth Amendment interest in the phone. McCarr's access and control did not usurp Defendant's interest. Rather, she had authority through her shared access. The doctrine of third-party consent makes clear that those who share "common authority" over property with others have "assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171 n.7. Even assuming the phone nominally "belonged" to Defendant, third-party consent "is not merely a question of property interest." Buckner, 473 F.3d at 554.

Viewing the totality of the circumstances as they appeared to Agent Matthews, McCarr's degree of control over the phone here was enough to give her "common authority." McCarr knew the password to access the phone and could make calls and send text messages. She could access pictures on the phone. Defendant had knowledge of her access but made no objection. In fact, he told her to continue holding the phone while he was incarcerated. The length of time

16

she held the phone, combined with her effectively unimpeded access to it, surpasses the degree of control in other "common authority" cases. Cf. Mancusi, 392 U.S. at 369-70 (acknowledging that occupants of a shared office could have consented to search of the premises); Gardner; 887 F.3d at 782-84 (minor who sometimes shared phone with sex trafficking defendant for use in criminal activity had apparent joint access).

Perry's remaining arguments are unavailing. The bailment theory from Moreno v. Idaho, No. 4:15-cv-342, 2017 WL 1217113 (D. Idaho Mar. 31, 2017), is ill-suited for this case for much the same reasons as Jones. The court should also not presume that McCarr's control over the phone, which was otherwise unimpeded, excluded the right to hand it over to police. Such a presumption would completely undermine the third-party-consent doctrine. And the claim that law enforcement should have yielded to Defendant's own allegedly "superior" privacy interest fails considering the objective facts as they appeared to Agent Matthews.

   2.   Validity of McCarr's Consent to the Phone Search

The second part of the consent analysis considers whether McCarr's consent was voluntary. Voluntary consent is the product of "essentially free and unconstrained choice." United States v. Tyson, 360 F. Supp. 2d 798, 805 (E.D. Va. 2005) (quoting United States v. Watson, 423 U.S. 411, 424 (1976)). Consent is invalid if the consenting party's "will has been overborne and his capacity

for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). The government bears the burden of proving voluntary consent by a preponderance of the evidence. United States v. Washington, 542 F. App'x 234, 235 (4th Cir. 2013) (per curiam).

The factfinder must examine the totality of the circumstances to determine whether consent was voluntary. Tyson, 360 F. Supp. 2d at 805. Factors to consider include the characteristics of the consenting party and the conditions under which consent was given. Id. Whether the consenting party knew of his or her right to refuse is a relevant factor, but the government need not establish that knowledge to prove voluntariness. Id.

The record is somewhat thin on this issue. The government produced no written, signed consent form, nor did McCarr herself testify at any evidentiary hearing. On cross-examination of Agent Matthews, counsel for Defendant noted that he had not recorded his conversations with McCarr, and that the government had not subpoenaed her to testify at the hearing. However, Defendant introduced no contradictory evidence of his own on the question of voluntary consent. In his supplemental brief, Defendant merely reiterates the lack of written or testimonial evidence from McCarr herself. Def.'s Suppl. Br. 4 (ECF No. 99). Responding to Defendant's implied challenge to the government's method of proving voluntariness here, this Report concludes that supporting

testimony from McCarr was not necessary for the government to meet its burden. This follows from the understanding that district courts are entitled to make credibility determinations on suppression motions and rely solely on testimony from government officials. See, e.g., Washington, 542 F. App'x at 235 (affirming district court's conclusion that consent was voluntary despite conflicting evidence from the consenting party and another person because the court found the police officer's testimony more credible).

The uncontradicted evidence shows that McCarr did consent, and that her choice to turn over the phone to Agent Matthews was voluntary and free from coercion. First, Agent Matthews made the request over the phone, away from the coercive atmosphere of a court or police station. Although McCarr was under subpoena at the time, the subpoena required only her presence, and even a party in custody may validly consent if the circumstances are otherwise uncoercive. Tyson, 360 F. Supp. 2d at 805. When Agent Matthews asked McCarr to bring the phone with her to Norfolk, she raised no objection, but rather noted that she had no further use for it since her own phone had been reactivated. She reiterated this fact when she arrived in Norfolk and met Agent Matthews at the U.S. Attorney's office. She also voluntarily unlocked the phone for Agent Matthews, allowing the search of its contents. Although the government offered no evidence to demonstrate that McCarr knew she

was free to refuse consent, Agent Matthews never framed his questions as any more than requests. These circumstances give the impression that McCarr's handing over the phone was a "voluntary consent to a request," not a "begrudging submission to a command." United States v. Robertson, 736 F.3d 677, 680 (4th Cir. 2013).

## Conclusion

This Report concludes that Defendant maintained a Fourth Amendment privacy interest in the HTC phone while it was in McCarr's possession, despite his incarceration. However, the government's warrantless search of the phone did not violate his rights because it was based on McCarr's valid consent. As a third party with common authority over the phone, McCarr had at least apparent authority to consent to the search, and she did so voluntarily. Accordingly, this Report recommends the court DENY Defendant's Second Motion to Suppress. (ECF No. 33).

### Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this report on the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to any other party's objections

within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

August 19, 2019