IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:18-cr-113 |
| ) | |
| ADONIS MARQUIS PERRY, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENSE COUNSEL'S
MOTION TO WITHDRAW**

The United States of America now responds to counsel's motion to withdraw, ECF No. 123. The government takes no position on counsel's motion, but given next week's trial, asks that a hearing on the motion be scheduled as soon as practicable.

The government also sets forth the following facts detailing the defendant's egregious conduct toward his attorneys. Whether the defendant is represented at trial or proceeds *pro se* and is appointed standby counsel, the Court should take additional steps to protect that attorney, such as ordering the defendant's legs and non-writing hand shackled or directing the marshals to equip the defendant with a stun belt, all under "a table skirt around the defense table" to shield the restraints from the jury's view. *Atkins v. Polk*, No. 1:06CV372, 2011 WL 3608234, at *33 (W.D.N.C. Aug. 16, 2011), *aff'd sub nom. Atkins v. Lassiter*, 502 F. App'x 244 (4th Cir. 2012).

Finally, the government discusses how the Speedy Trial Act should guide the Court's ruling.

**I.   The defendant's violent behavior toward his attorneys show that additional safety measures are needed at trial.**

The defendant has now threatened with violence at least three of his attorneys. In early 2018, before these charges were adopted for federal prosecution, "when his attorney failed to do

what he wanted, … he verbally threatened to kill [his attorney], and [he] did not regret [that] decision." *See* State Competency Evaluation at 3, ECF No. 64-2.

In December 2018, the defendant threatened his second court-appointed attorney in this case. During an in-person meeting in jail, he threw a table and a file at his attorney and advanced within a foot of his attorney, screaming that he was going to "F*ck [his attorney] up." Mot. to Inquire Regarding Counsel at 2, ECF No. 63.

Roughly a week later, the defendant sent his attorney a letter in which the defendant wrote that he "could have beat[en] [his attorney] to death in that room the other day," that his attorney should "withdraw from [his] case because next time [he] feel[s] that [his attorney] [is] not going to walk away so lucky," and that he "hope[s] and pray[s] it don't come down to [him] happening to do some thing to get [his attorney] off the case." *Id.* at 3.

In May 2019, the defendant assaulted his attorney in open court. Magistrate Judge Miller stated on the record "that Mr. Perry, who was shackled, lunged at [his counsel] and is being escorted from the courtroom by the marshals." Tr. at 19, ECF No. 86.

In June 2019, the defendant's attorney summarized what happened at a recent meeting with the defendant: the defendant "got extremely angry, was hitting the glass with the phone and threatening me. He sent some letters that I would also consider threatening on various levels." Tr. at 99, ECF No. 96. Counsel summarized one of those letters for the Court: "[I]f I didn't do something he wanted to do, he was going to send his family and the press to my office. And when he says his family, I don't know what that means." Tr. at 100. Counsel took that statement as a threat against him and his "office staff, where if I do something Mr. Perry doesn't like or doesn't agree with or we don't get a good result in some aspect of the litigation that the response to that is rage and threats." Tr. at 103.

The defendant now threatens his third court-appointed attorney. He began threatening his new attorney last month at the hearing on his attorney's motion to continue trial. The defendant became upset when the Court granted his attorney's motion and rescheduled the trial date two weeks later. The defendant accused his attorney of "F'ing his life up, to the point that court security had to intervene." Mot. to Withdraw as Counsel at 2. As the marshals escorted the defendant from the courtroom, he shouted to his attorney, "I'm going to break your face!"

The defendant then sent two threatening letters to his new attorney. In the first letter, the defendant told his attorney "that 'you are about to find out how ugly s\*\*\* can get,' that 'you go home to your family every night but I can change that and I put that on everything I love.'" *Id.* In the second letter, the defendant threatened to "send some people to both of your Law Office[s]," just like he did to his second attorney. *Id.* at 3.

The defendant's egregious conduct toward his attorneys shows that he is "a safety risk" warranting additional security measures at trial to protect his trial attorney, whether acting as counsel or standby counsel. *Atkins*, 2011 WL 3608234, at \*33. Shackling the defendant's legs and non-writing arm and, if necessary, also equipping him with a stun belt should help, and covering those restraints with a table sheet will keep the restraints outside jury's view and avoid any unfair prejudice. *See id.*

## II.    The Court's Ruling May Implicate the Speedy Trial Act

The Court's decision may also implicate the Speedy Trial Act. The Act's cutoff date is now December 23, 2019. The speedy trial clock reset on the filing of the superseding indictment, which added new and different charges—three additional obstruction counts and a drug-possession count. *See* Superseding Indictment, ECF No. 24.

The Fourth Circuit has ruled that "a superseding indictment that adds either a new

defendant or new charges restarts the speedy trial clock." *United States v. Lesczynski*, 86 F. App'x 551, 554 (4th Cir. 2004) (unpublished per curiam opinion). "When an indictment is dismissed on the government's motion, … the seventy-day Speedy Trial Act period is calculated from the date of the first arraignment" only when "the defendant is thereafter re-indicted on identical charges." *United States v. Osteen*, 254 F.3d 521, 525 (4th Cir. 2001); *see also United States v. Ellis*, No. CR 2:15-799-RMG, 2017 WL 11439295, at *3 (D.S.C. June 22, 2017) (relying on *Lesczynski* and *Osteen* in ruling that a superseding indictment adding new "conspiracy charges" "reset the Speedy Trial Act clock"), *aff'd*, 781 F. App'x 271 (4th Cir. 2019) (unpublished per curiam opinion).

Here, the new Speedy Trial Act clock did not start until the defendant was arraigned on the superseding indictment—September 19, 2018. "A defendant shall be tried within seventy days from the filing date of the indictment or from the date he has appeared before a judicial officer, whichever date occurs last." *United States v. Segers*, 153 F.3d 724, 1998 WL 436325, at *5 (4th Cir. 1998) (unpublished table opinion) (citing 18 U.S.C. § 3161(c)); *see also United States v. Black*, 850 F.2d 690, 1988 WL 68406, at *3 (4th Cir. 1988) (unpublished table opinion) ("Appellant was tried seventy-one days from his indictment but only sixty-two days after his arraignment. Again, the Speedy Trial Act was not violated."). The *Segers* panel applied that rule to superseding indictments when it concluded, "Because [the defendant] was tried within seventy days of arraignment for his second superseding indictment, there was no error." 1998 WL 436325, at * 5.

Within three days of the defendant's arraignment, he filed the first in a series of pretrial motions that "automatically" excluded time from the Speedy Trial Act clock. *United States v. Tinklenberg*, 563 U.S. 647, 656 (2011); *see* 18 U.S.C. § 3161(h)(D). On September 27, 2019, the Court ruled on the last of those motions, ECF No. 111, so the clock started again the next day, with

4

all but three days excluded under the Act.

The defendant filed another set of pretrial motions beginning on November 8, 2019, ECF Nos. 116–17, and on November 22, the Court ruled on the second motion, ECF No. 120, excluding another 14 days from the Speedy Trial Act clock. Finally, the time from filing the recent Motion to Withdraw is excludable—three days and counting.

So at the time of this filing, all but 59 days are excluded under the Speedy Trial Act, and the clock will start again the day after the Court rules on the Motion to Withdraw.

If the Court denies the motion, the Speedy Trial Act does not come into play unless defense counsel asks for another continuance to prepare for trial—he finished his previous trial last week and still awaits that jury's decision. Allowing defense counsel additional time to prepare will likely require an ends-of-justice trial continuance, possibly over the defendant's objection, outside the Speedy Trial Act cutoff. The same finding would be necessary if the Court grants the motion and appoints new counsel.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/
William B. Jackson
Joseph E. Depadilla
Assistant United States Attorneys
Attorneys for the United States
101 West Main Street, Suite 8000
Norfolk, VA 23510
757-441-6331 Office
757-441-6689 Fax
william.jackson3@usdoj.gov
joe.depadilla@usdoj.gov

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on this 10th day of December, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Nicholas R. Hobbs, Esq.
Hobbs & Harrison, P.C.
21-B East Queens Way
Hampton, VA 23669

/s/
William B. Jackson
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA  23510
Telephone Number: (757) 441-6331
Facsimile Number: (757) 441-6689
E-Mail Address: william.jackson3@usdoj.gov