```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
2                        Norfolk Division

3

4    - - - - - - - - - - - - - - - - - -
                                        )
5      UNITED STATES OF AMERICA,        )
                                        )
6      v.                               )   CRIMINAL ACTION NO.
                                        )   2:18cr113
7      ADONIS MARQUIS PERRY,            )
                                        )
8            Defendant.                 )
                                        )
9                                       )
     - - - - - - - - - - - - - - - - - -
10

11
                     TRANSCRIPT OF PROCEEDINGS
12
                         Norfolk, Virginia
13
                         December 12, 2019
14

15
     BEFORE:   THE HONORABLE REBECCA BEACH SMITH
16             United States District Judge

17


18
     APPEARANCES:
19
              UNITED STATES ATTORNEY'S OFFICE
20            By:  William B. Jackson
                   Joseph DePadilla
21                 Assistant United States Attorney
                   Counsel for the United States
22
              HOBBS & HARRISON, PLLC
23            By:  Nicholas R. Hobbs
                   Counsel for the Defendant
24

25
```

JODY A. STEWART, Official Court Reporter

1        (Hearing commenced at 2:01 p.m.)
2        THE CLERK:  In case 2:18cr113, United States of
3   America versus Adonis Marquis Perry.
4        Mr. Jackson, Mr. DePadilla, is the defendant ready
5   to proceed?
6        MR. JACKSON:  The United States is ready.  Good
7   afternoon, Your Honor.
8        THE COURT:  Good afternoon.
9        THE CLERK:  Mr. Hobbs, is the defendant ready to
10  proceed?
11       MR. HOBBS:  The defense is ready.  Good afternoon,
12  Your Honor.
13       THE COURT:  Good afternoon.  Let the record reflect
14  that Mr. Perry is here in person sitting at counsel table
15  with Mr. Hobbs.
16       Mr. Hobbs, I believe that you have made a motion to
17  withdraw as counsel in the case.  If you want to present the
18  motion to the Court.
19       MR. HOBBS:  Yes, Your Honor, if I could.
20       THE COURT:  Yes.
21       MR. HOBBS:  As the Court's aware, I filed a motion
22  to withdraw on Sunday, and I think the Court's well aware of
23  the procedural history behind this case.  I put a little bit
24  in the motion concerning when I came into the case earlier
25  this summer and the reasons why I came into the case at that

1    point.  The relationship between Mr. Perry and I, I thought,
2    was very good.  I tried to communicate with him as best I
3    could.  The last time we were in front of the Court was on
4    my motion to continue, which the Court granted.  It was only
5    a brief continuance, it was for two weeks, and that was
6    because of another trial that I was engaged in that we
7    actually got a verdict on Tuesday, late Tuesday.
8           THE COURT:  So that the record is clear, it was
9    Tuesday of this week?
10          MR. HOBBS:  This week, yes, Your Honor.  So that's
11   December the 10th.
12          THE COURT:  The trial actually went through the
13   whole first week of December, the week of December 2nd, 3rd?
14          MR. HOBBS:  Yes, it did, Your Honor.
15          THE COURT:  It concluded on Tuesday afternoon?
16          MR. HOBBS:  Yes, Your Honor.  December 10th, just
17   two days ago.
18          THE COURT:  It was the late afternoon?
19          MR. HOBBS:  Yes, Your Honor.  In fact, I left the
20   courthouse right at 5:00.
21          THE COURT:  I just wanted the record to be clear on
22   that.
23          MR. HOBBS:  Yes, Your Honor.  That is the status of
24   the prior case that gave rise to the continuance in this
25   case, which, again, the Court granted, and that continuance

was only for a short period of time.  After the continuance was granted, I received more correspondence from Mr. Perry. Again, I try to be careful about any letters that I receive from Mr. Perry because I do believe that I still do owe him a duty as my client.

But some of them had some threats in it that were almost daring me not to take those threats seriously. Because of that, I did have to take some actions to make sure that my staff was protected.  I was here in Norfolk throughout, up until Tuesday, as we just discussed.

But to do that, Judge, I think the conflict now and the relationship between Mr. Perry and I has deteriorated to the point where we cannot continue on in a lawyer/client capacity.  Just to give one example for the Court for why I feel that it's got to this situation, I received a 404(b) notice from the government late Tuesday, which I was able to review yesterday.

It's no secret Mr. Perry has got prior convictions of felonies.  The government intends to introduce his prior conviction, as well as his presentence report, his statement of facts, some other things that if I was in a usual position with the client, I would advise stipulations.

In this situation I feel like I'm sort of in a almost catch-22 situation.  I think it's in his advantage to stipulate, but I believe if I stipulate, then I'm going to

1 receive another threat.  So to go back and forth between do
2 I not stipulate out of safety, or do I go ahead and
3 stipulate against what I believe will be Mr. Perry's
4 ill-will toward me stipulating to the government, but I
5 think it's in his best interest.  I don't know -- that's
6 sort of where I keep running through these issues in my
7 mind, at what point do I act?  So I think that's why it was
8 necessary for me to file the motion.
9       THE COURT:  Let's don't concern ourselves about the
10 stipulations or not, because, obviously, if you're an
11 attorney in the case, you would go to your client and you
12 would discuss the stipulations.  If the client agreed, you
13 tell the client what you would any client, whether the
14 client is mad at you or not.  I mean, a lot of clients get
15 angry.
16       The point is that if you are in the case, you would
17 go to your client and say, "These are the things that are
18 out there.  It's in my opinion," whatever it is, "in your
19 best interest to stipulate, and I'm advising you of the
20 pros, I'm advising you of the cons," and you let him
21 ultimately make that decision.  That doesn't concern the
22 Court at all.
23       Mr. Perry can say you advised him of the advantages
24 to stipulating, so certain information doesn't go before the
25 jury.  You can advise him that he doesn't have to, and he

1  makes that decision, and you put that on the record with the
2  Court.
3          So that is not a consideration, in my opinion, in
4  the motion to withdraw. The consideration is the letters
5  that you quoted parts of them in your motion. You submitted
6  the originals for *ex parte* review under seal by the Court,
7  and I will file them as such, *ex parte* under seal because,
8  as you say, he's still your client, and you have a
9  relationship with him until you withdraw or until the Court
10 allows you to withdraw.
11         MR. HOBBS: Understood, Judge.
12         THE COURT: So the two original letters, which I
13 have reviewed *ex parte* under seal, will remain under seal
14 *ex parte*, and the Court will give you copies to retain for
15 your records.
16         So let's go back. I understand your motion, and
17 I'm going to want to hear from Mr. Perry, and I'm going to
18 want to hear from the United States.
19         Before I hear from Mr. Perry, it's the Court's
20 understanding from your filing, Mr. Jackson, that the
21 government takes no position?
22         MR. JACKSON: That's correct, Your Honor.
23         THE COURT: Then, Mr. Perry, you can address the
24 Court from there, if you're more comfortable. If you want
25 to pull the microphone and address the Court from there, you

1  certainly can.  Would that be your preference?
2          THE DEFENDANT:  I guess.
3          THE COURT:  Well, that would be fine.  Just speak
4  up so I can hear you.
5          THE DEFENDANT:  Um, as you said before, my
6  relationship was good with Mr. Hobbs.  He came to discuss
7  the case, but every time he ever came to talk to me, he
8  acted like he had -- he was so caught up with his other
9  cases, and he had to go or whatever, I never been able to go
10 over anything, any of the -- any of my case documents or
11 anything with Mr. Hobbs.
12         The whole time he been assigned to my case, I been
13 asking him for bits and pieces of my motion to discovery.
14 He has gave me most of my motion to discovery now.  It's a
15 few things that were left out.  Mr. Hobbs never -- I sent
16 him letters asking him to subpoena certain witnesses to my
17 trial.  That never happened.  I never received my
18 transcripts from phone call documents.
19         THE COURT:  I'm sorry.  I just can't hear you.
20         THE DEFENDANT:  I never received the actual
21 transcripts from the phone calls, part of the motion
22 discovery.  They transcribed them so I can be able to read
23 them because it would take hours and hours to go over the
24 DVDs or such.  He never reviewed any of the videos from the
25 motion to discovery or me, anything.  He -- every time I

1   tried to get my family to contact him or call him, they
2   don't answer, you know.  What am I left to do with this?
3   This is my life we are talking about here.
4           THE COURT:  Let me just mention a couple of things
5   to you in no particular order of importance.  Number one, I
6   would tell you that over the last seven weeks, it's of
7   record in this court, Mr. Hobbs, as well as, I think, maybe
8   up to eight or nine other attorneys have been in a trial
9   that has been pending in this court since 2017 before Judge
10  Davis.
11          So he had a loyalty to that defendant, as well as
12  to you, but there is not any way physically he can be in two
13  places at one time.  So in terms of the last few weeks, and
14  he was prepared, as I understood it, to go to trial on
15  December 3rd.  The only thing that kept the trial from
16  going was this other matter.
17          The second thing is, the videos, I feel assured,
18  and Mr. Hobbs can let us know, he has reviewed all of that.
19  It's just that another attorney, as I recall, Mr. Woodward,
20  was in the case when the motions to suppress were being
21  heard.  Those were, as I understand it, parts of the motion
22  to suppress.  So, consequently, those had already been
23  reviewed with you, and you had gone through all of this.
24  There have been a couple of motions to suppress hearings.
25          So there would be no reason for Mr. Hobbs to

1   re-review that information necessarily with you.  So if
2   you're talking about those videos, the Court has ruled that
3   they can come in, and you have seen those videos and been
4   able to make any arguments about them during the motion to
5   suppress.
6           So Mr. Hobbs came in this case, when was it,
7   August?
8           MR. HOBBS:  I believe July, Judge.
9           THE COURT:  Sometime in July.  Then I would tell
10  you that the record shows, and I have gone through the
11  record and the transcripts on the motion to inquire, I
12  believe that Judge Miller held.
13          MR. HOBBS:  Yes, Your Honor.
14          THE COURT:  It seems that there has been a great
15  deal of contact with you, Mr. Perry, at least from the
16  record before the Court on these transcripts and motions to
17  inquire.
18          So I'm not exactly sure that I understand what the
19  problem is.  What is your position?  Do you want Mr. Hobbs
20  to withdraw?
21          THE DEFENDANT:  Yes.
22          THE COURT:  You understand that when he withdraws,
23  you are delaying this matter even further?
24          THE DEFENDANT:  I'm not willing to go in there and
25  risk my life with an attorney that is not going to help me,

1    that is not coming up and talking to me, does not discuss my
2    case with me.  I'm not willing to risk my life with
3    something like that.
4            THE COURT:  I'm listening to your position.
5            THE DEFENDANT:  And, like I said, I have tried
6    multiple times to contact Mr. Hobbs, to get through to
7    Mr. Hobbs to talk to him about things pertaining to my case,
8    and it's like he avoids me.
9            THE COURT:  Well, I know that he has been in this
10   court for the past seven weeks.
11           THE DEFENDANT:  I understand that.
12           THE COURT:  He is not avoiding you.
13           THE DEFENDANT:  I understand that.  This was well
14   before the trial even started.  I tried multiple times to
15   come and visit me.  As soon as I start talking about the
16   case or pulling out documents, he's ready to get up out of
17   there every time.
18           THE COURT:  Well, I hear what you're saying, but I
19   would say that the proceedings before Magistrate Judge
20   Miller and the motion to inquire, because I believe there
21   was a motion in this regard by, I believe it was by the
22   defendant.
23           MR. HOBBS:  Yes, Your Honor.  That was in November.
24   It was on a Friday when we were in recess on the other
25   trial.

```
1              THE COURT:  At that point it was during, and I
2    believe Judge Miller, who had had the experience with all of
3    the attorneys thus far in terms of, I think it was first
4    Mr. Grindrod, and I believe Mr. Grindrod withdrew, and after
5    Mr. Grindrod, it was Mr. Woodward.  He stayed in the case
6    until the motion to suppress was concluded.
7              MR. HOBBS:  That is correct, Your Honor.
8              THE COURT:  Then he was allowed to withdraw.  Then
9    there was the motion from Mr. Perry, and the only thing I
10   can accept is the official transcript.  That's what I accept
11   from that proceeding.  The official transcript at that
12   hearing, Mr. Perry, you indicated you wanted Mr. Hobbs.
13   This was just back in November after Mr. Hobbs was well into
14   this other case, you indicated that you wanted him to
15   proceed.
16             THE DEFENDANT:  Because he was already on the case.
17   I just didn't want -- I didn't want Woodward on my case
18   after the whole altercation.  I didn't want Woodward on my
19   case, for real.  To be honest with you, the best attorney
20   that I ever had thus far was Andrew Grindrod, and the only
21   reason why I ever -- I stopped talking to Andrew Grindrod
22   because he tried to force me to take a plea.  As far as all
23   the other attorneys that I had on my case, thus far he has
24   been the best attorney that I ever had.
25             THE COURT:  The problem is, Mr. Perry, that you are
```

1 becoming the architect of your own problems here.  The Court
2 can't resurrect Mr. Grindrod as an attorney once he has been
3 in it and withdrawn.  I don't know that even if the Court
4 could, he would be willing to come back in the case.  You
5 have to cooperate with these attorneys, and they have to
6 cooperate with you.  The Court's interest is the same as
7 yours.
8          THE DEFENDANT:  I have been cooperating with
9 Mr. Hobbs since you all assigned him to my case, and you can
10 ask him right now.  I never in any way disrespected
11 Mr. Hobbs as long as he has been my attorney.
12          THE COURT:  Well, the letters were pretty tough
13 letters.
14          THE DEFENDANT:  I'm saying.
15          THE COURT:  Mr. Perry.
16          THE DEFENDANT:  If he was doing his job.  If you
17 trust a person with your life, if he was doing his job, I
18 wouldn't have to say anything to him.
19          THE COURT:  You want Mr. Hobbs to withdraw?
20          THE DEFENDANT:  Of course.
21          THE COURT:  You persist in your motion?
22          MR. HOBBS:  Yes, I do, Judge.
23          THE COURT:  Mr. Hobbs has filed the motion to
24 withdraw, and as I indicated, the United States did respond
25 but did not necessarily take a position on the withdrawal.

1  The grounds for Mr. Hobbs' motion to withdraw are fully set
2  out in the motion filed on December 8th, 2019, document
3  number 123, and the letters are being filed *ex parte* under
4  seal with the Court.
5        I find no inappropriate conduct by Mr. Hobbs.  I
6  have reviewed the full record, I've reviewed the motion to
7  inquire, and he's certainly not being relieved because of
8  any inappropriate conduct or any failure on his part.
9        They are not even veiled but clear threats in the
10 various letters that have been sent.  I won't go through the
11 whole record now of the history with the attorneys or the
12 threats that have been rendered, but just recently, since
13 the hearing on November 22nd, when the Court had, obviously,
14 no choice but to move the trial, and I would also note that
15 when it was moved, it was within the speedy trial deadline.
16 So there was no prejudice in that regard to Mr. Perry.
17       In that hearing there was some mumbling from the
18 defendant to his attorney, and the court security had to
19 intervene.  Mr. Hobbs persisted in his representation, and
20 on November 25th he sent a letter to Mr. Hobbs, which
21 recounted some very untoward language and threats.  I'm just
22 not going to even repeat them on the record.  They are right
23 here.  They are in the letter.  They are on Page 2 on the
24 filing.  There was a line in there that says, "You go home
25 to your family every night, but I can change that, and I put

1 that on everything I love." That was a direct threat.
2 There were some other things said before that.
3     Then on December 7th the defendant sent another
4 letter and said that his counsel had been lying from the
5 very beginning.
6     Now, Mr. Perry, I know that you can conduct
7 yourself properly in court.
8     THE DEFENDANT: Yes, ma'am.
9     THE COURT: I know you can. So I expect you to do
10 that. He did say some things, and I'll quote, "I have to
11 send some people to go to your law office to prove that
12 you" -- bad word -- "can get real. I see now you feel that
13 it can't happen or I might just be blowing smoke. I tell
14 you one thing, I'm not going to spend the rest of my life
15 behind bars. It's going to be for the real reason. I want
16 you to know that whatever happens at the end of all this, at
17 the trial, is what you made it, Hobbs."
18     As a result of this, I would give Mr. Hobbs credit,
19 even after the December 7th letter, he went to the jail to
20 see Mr. Perry on December 8th to inform him that he had no
21 choice but to withdraw because not only does his family feel
22 threatened, he felt threatened, but his staff felt
23 threatened. I'm not going to read all this into the record.
24     I would find that as a result of the latest
25 actions, in culmination with the history of the case and the

1    matter, that it is appropriate to allow Mr. Hobbs to
2    withdraw.  I do so regrettably because I think Mr. Hobbs is
3    a fine attorney and has persevered in this case.
4             I understand that when an attorney breaks down in
5    their mind and the relationship goes astray and with these
6    kind of threats, I would find that there is a complete
7    breakdown in communication, and also Mr. Perry has affirmed
8    today that he doesn't want Mr. Hobbs as his attorney.  So,
9    consequently, I would find that the standard for withdrawal,
10   I think it's in the *Mullen* case, has been met here.
11            The motion has, obviously, been timely by
12   Mr. Hobbs, and there is a complete total lack of
13   communication at this point, obviously, preventing an
14   adequate defense, so I do grant the motion to withdraw with
15   three caveats.  Number one, Mr. Hobbs, you obviously have to
16   turn over your file to any new attorney that is appointed.
17   The next matter is that any new attorney, obviously, cannot
18   be prepared for a trial next Tuesday.
19            So, consequently, the Court, of necessity, is going
20   to have to continue this trial again.  I do find that it's
21   Mr. Perry who's causing these matters.  There is a complete
22   breakdown.  You've had turmoil with various attorneys and
23   the language and everything that's been used.  On the other
24   hand, I know that there are times, for instance today, I
25   think that you're conducting yourself fairly well,

1   Mr. Perry, but you can't keep going through attorneys.  The
2   law says at some point you cannot keep going through
3   attorneys, and the Court does not have to keep appointing
4   attorneys to represent you.  So you're going to have to keep
5   yourself under control, and you're going to have to
6   cooperate with the attorney or you're going to find yourself
7   on your own.
8           You would still have to have standby counsel so
9   that the Court is assured that there is a presence during
10  the whole proceedings.  For now I will let Mr. Hobbs
11  withdraw.  I will appoint new counsel to represent you.
12          I would find that the interest of justice in having
13  the speedy trial and the public are outweighed here by the
14  need for Mr. Perry to have an attorney, to have an attorney
15  that's prepared, and to have an attorney so that there is a
16  continuity as between representation by that attorney and
17  the trial.  Given the file here, I don't see how anybody
18  could be prepared.  If they can, I appoint them, and they
19  are ready to go forward, I will do that.
20          Obviously, if they move to continue, it will be a
21  continuance granted on the defense's motion, and,
22  consequently, that will, again, toll the speedy trial.  But
23  I still don't know if it will toll it enough that the person
24  can be prepared.  But the Court is left with no choice but
25  to allow Mr. Hobbs to withdraw.

1              Is there anything, Mr. Jackson, that you want to
2    add today?
3              MR. JACKSON:  Your Honor, just to be clear, the
4    trial on Tuesday is taken off of the docket?
5              THE COURT:  No.  I'm going to leave it on for now,
6    but I'm making it clear that any new attorney that is
7    appointed, obviously today is the 12th.
8              MR. JACKSON:  Yes, Your Honor.
9              THE COURT:  It's a Thursday.  If the new attorney,
10   after discussions with Mr. Hobbs, does not feel that he or
11   she can go forward with the trial on Tuesday, I will
12   entertain a continuance.
13             What I'm saying now is that I would continue if
14   it's legitimate, which I don't know of any attorney -- maybe
15   there is one out there -- that can spend every hour between
16   now and the 20th.  But I will entertain a motion for a
17   continuance, and if I do, then we will set a new trial date
18   and go from there.
19             MR. JACKSON:  Thank you, Your Honor.
20             THE COURT:  Mr. Hobbs, is there anything else you
21   want to say?
22             MR. HOBBS:  Nothing from me, Judge.
23             THE COURT:  Mr. Jackson, is there anything else you
24   want to say?
25             MR. JACKSON:  No, ma'am.

1    THE COURT: I will start working on it this
2  afternoon with the clerk, and I will try my best to get an
3  attorney. It's 2:30 today, but I'll try my best to get
4  somebody either today, and at the latest tomorrow, to
5  represent you and have the clerk instruct them or in my
6  order to meet with Mr. Hobbs. I will put that in my order.
7    THE DEFENDANT: Will call me?
8    THE COURT: Of course, of course. All the file has
9  to be turned over. A new attorney has to be able to go
10 through all the paperwork and whatever after this point,
11 also point out everything from the docket and so forth.
12   THE DEFENDANT: Mr. Hobbs informed me that he
13 doesn't have some documents that were missing out of my
14 motion to discovery.
15   THE COURT: What you should do, Mr. Perry, is when
16 you have a new attorney, tell that attorney, ask that
17 attorney if he sees those documents, and if he doesn't, ask
18 him if he can get them for you.
19   THE DEFENDANT: Okay.
20   THE COURT: In other words, Mr. Hobbs has a duty to
21 turn over his file.
22   THE DEFENDANT: I understand.
23   THE COURT: When he turns over his file, you ask
24 the new attorney, and then if that new attorney doesn't have
25 the documents, then what you should do is ask that attorney

1 if he or she can get them for you.
2     THE DEFENDANT: He stated that he never had them
3 with me, but I know they exist because I had them before.
4 But he stated that he never had them.
5     THE COURT: Let's just wait and see whether they
6 are there or not. I don't know what you're talking about,
7 and I don't want to do that in court because I don't want
8 the prosecutor or anybody to hear what document you're
9 talking about.
10     All right. If there is nothing further, then the
11 Court will be in recess. The trial is still on for Tuesday,
12 but I will get an attorney appointed forthwith, and you will
13 have notice of that, Mr. Jackson. I assume that you would
14 be agreeable with the new attorney for a continuance, you
15 won't object?
16     MR. JACKSON: I will not object, Your Honor.
17     THE COURT: I understand the continuance is on the
18 defense.
19     MR. JACKSON: Yes, Your Honor.
20     THE COURT: With all that being said, the Court is
21 in recess until tomorrow.
22     (Hearing adjourned at 2:30 p.m.)

JODY A. STEWART, Official Court Reporter

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_________________/s/________________________x

Jody A. Stewart

X_______2-8-2021 _______x

Date