```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division

 3   - - - - - - - - - - - - - - - - - -
                                        )
 4                                      )
     UNITED STATES OF AMERICA,          )
 5                                      )
                                        )   CRIMINAL ACTION NO.
 6   v.                                 )   2:18cr113
                                        )
 7   ADONIS MARQUIS PERRY,              )
                                        )
 8           Defendant.                 )
                                        )
 9   - - - - - - - - - - - - - - - - - -

10

                         TRANSCRIPT OF PROCEEDINGS
11
                           (Sentencing hearing)
12
                            Norfolk, Virginia
13
                            December 3, 2021
14

15   BEFORE:  THE HONORABLE REBECCA BEACH SMITH
              United States District Judge
16

17

18   APPEARANCES:

19           UNITED STATES ATTORNEY'S OFFICE
             By:  William Jackson
20                Joseph E. DePadilla
                  Assistant United States Attorneys
21                Counsel for the United States

22           TREVOR JARED ROBINSON, ESQ.
             By:  Trevor Robinson
23                     And
             BRUCE C. SAMS, ESQ.
24           By:  Bruce C. Sams
                  Counsel for the Defendant
25
```

```
 1              (Hearing commenced at 2:06 p.m.)
 2              THE CLERK:  In case 2:18cr113, United States of
 3    America versus Adonis Marquis Perry.
 4              Mr. Jackson, Mr. DePadilla, is the government ready
 5    to proceed?
 6              MR. JACKSON:  The United States is ready.  Good
 7    afternoon, Your Honor.
 8              THE COURT:  Good afternoon.
 9              THE CLERK:  Mr. Robinson, Mr. Sams, is the
10    defendant ready to proceed?
11              MR. ROBINSON:  Yes, we are.  Good afternoon, Judge.
12              MR. SAMS:  Good afternoon, Your Honor.
13              THE COURT:  Good afternoon.
14              Let the record reflect that Mr. Perry is here in
15    person with his counsel.  Before we get started, I just want
16    to mention that we are in a courtroom that is properly
17    equipped for COVID proceedings.  It's the same courtroom
18    that we tried the case in.  I would note that everyone is
19    socially distanced.  Anyone in the gallery is socially
20    distanced.  Everyone has on masks.  I would ask you to keep
21    on your mask, except if you do address the Court, when you
22    come up to the podium, if you would remove your mask so that
23    the court reporter can properly take down your testimony
24    through the Plexiglass coverings that are with all of us.
25    Then wipe down the podium and the microphone as you did at
```

1    the trial with the Clorox wipes, and then dispose the Clorox

2    wipe into the trash can that's provided.  Also, I am quite a

3    distance from everyone, and I'm behind Plexiglass, and I

4    will remove my mask as I address counsel and rule on the

5    objections.

6         First, I will just give a very brief history from

7    the trial and where we are for sentencing.  On June 24,

8    2021, a jury found the defendant guilty on counts one

9    through six of the six-count second superseding indictment.

10        Count one charged the defendant with being a felon

11   in possession of a firearm, in violation of Title 18 of the

12   United States Code, Sections 922(g)(1) and 924(a)(2).

13        Count two charged the defendant with witness

14   tampering by attempting to influence, delay, and prevent

15   testimony, in violation of Title 18 of United States Code,

16   Section 1512(b)(1).

17        Count three charged the defendant with witness

18   tampering by attempting to cause a witness to evade legal

19   process, in violation of Title 18 of the United States Code,

20   Section 1512(b)(2)(C).

21        Count four charged the defendant with witness

22   tampering by attempting to cause a summoned witness to be

23   absent from an official proceeding, in violation of Title 18

24   of the United States Code, Section 1512(b)(2)(D).

25        Count five charged the defendant with obstruction

JODY A. STEWART, Official Court Reporter

1    of justice, in violation of 18, United States Code, Section

2    1512(c)(2).

3         Count six charged the defendant with possession of

4    a controlled substance, in violation of Title 18 of United

5    States Code, Section 844(a).

6         On September 8th, 2021, the probation officer

7    released the initial PSR.  On October 27, 2021, the

8    probation officer filed an amended PSR.  On November 4,

9    2021, the probation officer filed a second amended PSR,

10   which is what is before the Court today, ECF Number 225.

11        The defendant filed a position paper on November 3,

12   2021.  The United States filed a position paper on November

13   26, 2021.  The United States also filed a motion for an

14   upward departure or variance in the sentence on November 12,

15   2021.

16        THE DEFENDANT:  November the 19th.

17        THE COURT:  Excuse me.  That is correct.  November

18   19th, 2021.  There are three unresolved objections to the

19   PSR from the defendant and the unresolved motion from the

20   United States.  The United States can argue for a variance

21   when it argues for its sentence.

22        Right now we will deal with the objections that

23   have been filed on behalf of the defendant.  The first is a

24   firearm enhancement.  At a threshold matter, I would note

25   when a material portion of a PSR is disputed, the Court must

1  rule on the dispute.  That's under Federal Rule of Criminal

2  Procedure 32(i)(3)(B).  However, without an affirmative

3  showing, and I'm reading -- I'll start with the quote,

4  however, "Without an affirmative showing that the

5  information in the PSR is inaccurate, the Court is free to

6  adopt the findings of the PSR without more specific inquiry

7  or explanation."  That's in *United States v. Love*, 134 F.3d

8  595 at 606.  It's a 1998 Fourth Circuit case quoting from

9  United States v. Terry, 916 F.2d 157 at 162, which is a 1990

10  Fourth Circuit case.

11          So the first is the firearm enhancement.  Who will

12  present that?

13          MR. ROBINSON:  I will, Judge.

14          THE COURT:  Mr. Robinson, you can come up to the

15  podium.

16          MR. ROBINSON:  Good afternoon, Your Honor.

17          THE COURT:  Good afternoon.

18          MR. ROBINSON:  We have three unresolved objections

19  that were noted in the defendant's position paper, first of

20  which is the firearm enhancement, which indicates that it

21  was proven by any burden that Mr. Perry was in possession of

22  three to seven firearms.

23          Now, it's without question that two firearms at

24  issue were recovered by the arresting officers and were

25  presented via physically and presented by a photograph and

1    identified by serial number.

2         The other firearms at issue, one of them was from a

3    photograph posted on Facebook of Mr. Perry wearing a

4    colorful shirt and holding what was purported to be a

5    firearm.  Another photograph was entered with what was

6    purportedly a firearm on top of a, it looked like a small

7    gun safe, with next to it was pictured what was suspected to

8    be a quantity of marijuana.

9         Now, from what the defense recalls, as far as the

10   trial evidence goes, neither of those purported firearms

11   were recovered, no serial numbers were indicated, so

12   defense's position is that it was not proven to the

13   satisfaction of the Court that those were, in fact, firearms

14   for purposes of the enhancement.

15        THE COURT:  Well, let me ask you one question

16   there.  The picture and the selfie with the firearm, that

17   was admitted into evidence, was it not?

18        MR. ROBINSON:  It was, Judge.

19        THE COURT:  So, number one, you have that admitted

20   into evidence, and I would note, and I'm not saying that

21   this is dispositive, but the actual charge itself from which

22   he was convicted did say one or more firearms, including,

23   and it says, one of Glock model 17 9-millimeter

24   semi-automatic handgun, and a Taurus model 67 .357 magnum

25   revolver and that the firearms had been shipped in

7

```
 1    interstate and foreign commerce.  So those two were clearly
 2    established, you would agree?
 3              MR. ROBINSON:  Yes, Judge.
 4              THE COURT:  The other is the one that was the
 5    picture in the selfie, but it was admitted into evidence?
 6              MR. ROBINSON:  Yes, Judge.
 7              THE COURT:  Mr. Sams, I think, wants to tell you
 8    something.
 9              MR. ROBINSON:  Additionally, Judge, it was never
10    authenticated as to when that photograph was taken.
11    Obviously, it had to be sometime before the trial but no
12    definitive date.
13              THE COURT:  Thank you.
14              MR. ROBINSON:  I can address the other two matters.
15              THE COURT:  Let's do them one by one, and then
16    we'll know where we stand.  I have a question for the United
17    States about one of the enhancements, as well as you.
18              MR. ROBINSON:  All right.
19              THE COURT:  You can answer the question, too, but
20    it's really more aimed at the United States.
21              MR. ROBINSON:  Sure.
22              THE COURT:  I want to hear Mr. Jackson on this
23    objection.
24              MR. JACKSON:  Thank you, Your Honor.
25              We submit that this -- Mr. Perry holding this
```

1    firearm in this photo, we submit that that is more likely

2    than not a real firearm.  The standard here is

3    preponderance.  The question is whether it's more likely

4    than not that this is a real firearm.  We submitted in

5    evidence that Mr. Perry was caught with two real firearms in

6    this case.  There is also evidence that he was convicted of

7    possessing firearms in June 2009 and November 2015, multiple

8    firearms.

9         There has never ever been in any universe has he

10   been caught with a prop gun or a fake gun.  We know that in

11   the phone, everything related to firearms, besides this gun,

12   was real.  We know that in the picture in 6E, we know that

13   that is a Glock firearm.

14        Now, we suggested at the trial that it is the same

15   Glock firearm that he was caught with.  We didn't say it

16   was, but I know my closing argument I said it's a Glock

17   firearm that looks like the firearm that was in the vehicle.

18        THE COURT:  Well, let me see the pictures.  Do you

19   have all the pictures that you introduced into evidence?

20        MR. JACKSON:  Yes.  Should be up there.  I

21   submitted a package to Your Honor, as well.

22        THE COURT:  Okay.  This is Exhibit 2.  This is the

23   portion of the body cam.  What has been given to me is the

24   body camera footage of Officer Miller 2:18:17.  I don't know

25   that this is the portion of an audio recording.  That is

```
 1   Exhibit 9A.  I don't believe I have the photographs.
 2           MR. JACKSON:  You may have turned past them.  They
 3   are going to be -- this photograph here of Mr. Perry with
 4   the handgun, that is going to be 6D.  That is right after
 5   the body cam footage D.
 6           THE COURT:  That's one firearm.
 7           MR. JACKSON:  Yes.  That's the third firearm, is
 8   our argument.
 9           THE COURT:  You say that two were recovered from
10   the vehicle, which we know.
11           MR. JACKSON:  Yes.
12           THE COURT:  Then this picture which I've got, is
13   that part of the body camera because it's just the way it's
14   labeled here.  I guess it's the way the package has been
15   presented up to me.
16           MR. JACKSON:  The way I organized the package, Your
17   Honor.
18           THE COURT:  I've got a page that says Exhibit 2E,
19   portion of body camera footage, and first there is this.
20           MR. JACKSON:  Yes.
21           THE COURT:  Is that body camera footage?
22           MR. ROBINSON:  It's not.  That's the evidence from
23   his phone.
24           THE COURT:  This 2E, where did you get that number?
25           MR. JACKSON:  That was from the trial, Your Honor.
```

```
 1    I attached the evidence according to how we entered them in
 2    evidence at the trial.  I regret doing that now.  I should
 3    have attached them topically based on the objection.
 4            THE COURT:  Yes, you should.
 5            MR. JACKSON:  Which is causing some confusion.
 6            THE COURT:  This is the photograph that I recall,
 7    and this is the third firearm.  There were two recovered in
 8    the vehicle, and this was a third firearm.  Now, what was
 9    the evidence of when this was taken?
10            MR. JACKSON:  So we have evidence that this was
11    placed on Mr. Perry's phone in October or November, I
12    believe.  That was the evidence at trial.  But to be sure,
13    we don't know exactly when the photograph was taken.  We
14    know it was put on his phone in the same time frame as the
15    other guns were taken on the phone and right before the two
16    guns were taken from the traffic stop.
17            But I can answer that -- I mean, that is an issue
18    we can resolve easily.  I mean, under relevant conduct, when
19    it comes to adding up guns, there is not like it has to be
20    in a certain specific time frame.  As long as it's
21    prohibited, and he possess the firearm, then it counts.
22            THE COURT:  Well, no, it has to be relevant conduct
23    to what we have here.  In other words, you can't take a
24    picture of a firearm from somebody back in 2000 and give it
25    to the Court.
```

```
 1              THE DEFENDANT:   (Mumbling)

 2              THE COURT:  Wait just a minute.  Mr. Perry, please

 3    stop talking.  I'm really trying to understand this

 4    objection, and your attorneys have made a good point, and

 5    I'm trying to understand from the United States about this

 6    picture.

 7              THE DEFENDANT:  Yes, ma'am.

 8              THE COURT:  What I'm saying is you can't just take

 9    pictures off of a phone and say they possess firearms.  It

10    has to be relevant conduct.  It has to be in relation to at

11    least the time period that all of this was going on.

12              MR. JACKSON:  Your Honor, the time period can be

13    fairly broad when it comes to relevant conduct principles,

14    just like with a drug trafficking case, you have lots of

15    controlled buys spread around multiple years.  All those

16    drugs are still relevant conduct even though he may have

17    pleaded guilty to just one instance.

18              THE COURT:  I understand, but you've got a time

19    period, and you've got the drugs in the time period.  Let me

20    look at another thing I want to look at here on the firearm

21    enhancement.  I've got Paragraph 225 of the PSR.  I'm at 225

22    of the PSR, and I'm looking at 40.

23              MR. JACKSON:  One moment, Your Honor.  Paragraph

24    40.  Would you repeat the paragraph, Your Honor, that you're

25    looking at?
```

```
 1          THE COURT:  Wait just a minute here.  It's at Page
 2   40 where the probation officer is going through noting the
 3   specific paragraphs of the PSR that were impacted by the
 4   objections.
 5          MR. JACKSON:  Thank you, Your Honor.
 6          THE COURT:  What I'm trying to say is it was based
 7   upon the two recovered from the vehicle, and they're not
 8   disputing that, but the enhancement comes with three to
 9   five.  Let's just say one is being based on the photograph
10   that was displayed in selfies on the defendant's cell phone.
11   This was the one that I recall being introduced into
12   evidence.  I don't know what piece of evidence it was, but I
13   recall the photograph, and it had a number of others on
14   there.
15          What I'm trying to say is when were these
16   photographs taken?  Do you have any evidence of when they
17   were taken?
18          MR. JACKSON:  So we don't have a precise date of
19   when it was taken, but we can narrow down the range of when
20   it was taken.  We know it was taken on or about Mr. Perry's
21   birthday.
22          THE COURT:  Well, which birthday?  It just says,
23   "Happy birthday."  I'm not going to read the next.
24          MR. JACKSON:  Two of real blank my bro Adonis.  So
25   it's happy birthday to Adonis, the defendant.
```

1          THE COURT:  I don't want to read it.  It just says,

2    "Happy birthday," and it has some language on there, "My

3    bro, Adonis."

4          MR. JACKSON:  Yes.

5          THE COURT:  That doesn't say when it was taken.

6    He's had a lot of birthdays.

7          MR. JACKSON:  He has.  His birthday is October 1st.

8    Now, the date range for all these photos is between October

9    and November.  So we submit that based on that birthday, and

10   also given the fact to that he looks, with the dreadlocks,

11   just like he did when he was detained, arguably, two months

12   later, we believe that was the most recent birthday to this,

13   which was two months before the arrest and the traffic stop

14   in December, which is around the same time he has taking the

15   selfies of the other two guns, the Glock and the revolver.

16         THE COURT:  Where is the evidence of that?  That is

17   Mr. Jackson saying it.  Where is the evidence of it?

18         MR. JACKSON:  We have the body cam footage that was

19   entered into evidence at trial.  That shows a very clear

20   look of Mr. Perry and shows him with the same dreadlocks and

21   the same hairstyle as he did in this picture.  He looks very

22   similar to how he did in the picture, plus it couldn't have

23   been too long before that because he has been in custody for

24   quite a long time, and he was released from custody within a

25   year or two before his October 1st birthday here.

```
1              THE COURT:  Is that your full argument?
2              MR. JACKSON:  That is our argument, Your Honor.
3              THE COURT:  Well, I'm going to sustain the
4    objection.  I don't think that it has been properly
5    established before the Court or at trial exactly when this
6    picture was taken.  I know it came into evidence, but the
7    conviction that he was actually convicted of very
8    specifically in the indictment was the two firearms that
9    were recovered.  He wasn't convicted of any other firearms,
10   and I don't find that my recall of all of these pictures, I
11   can't remember whether there was an objection to it or not.
12   I don't recall an objection to the picture, but, in any
13   event, I can't find by a preponderance of the evidence that
14   this is relevant conduct for selfies on the cell phone that
15   you might have known when they went on, but you don't know
16   when the picture was taken, and that hasn't been
17   authenticated, so I'm going to sustain that objection.  I
18   cannot find by a preponderance of the evidence that that
19   enhancement would be warranted.
20             We will do any calculations, Mr. Noll, that need to
21   be done after we have ruled on all of the objections.
22             The next objection is to the leadership
23   enhancement.  Let me hear the defense counsel on that, then
24   I'll hear from you, I'll ask you a couple of questions, and
25   then I'll let them respond.
```

1          Mr. Sams.

2          MR. SAMS:  Thank you, Your Honor.  Your Honor, the

3   basis of this objection is that there are two separate types

4   of offenses that the defendant was convicted of.  One is the

5   possession of the firearm themselves and then in possession

6   of it as a convicted felon.  The other would have been the

7   obstruction of justice and tampering with the witness.

8          The defendant's objection is that, as how he was

9   charged in this and what the evidence proves is that he

10   initiated and tried to persuade the main witness, who was

11   the girlfriend at the time with him in the vehicle, when the

12   vehicle was stopped, by different jail telephone calls that

13   were recorded that had him indicating to her certain things

14   that he didn't -- asking her not to do.

15          That, in itself, would be the basis for the crime

16   itself.  There was no evidence showing that he organized or

17   led a type of conspiracy, which normally this would be part

18   of where the person has -- you know, give the types of acts

19   that each party is to have done or would have done.  In this

20   particular case, there was no act done by the -- well, she

21   wasn't the co-defendant -- the witness that he is accused of

22   tampering or which was also the basis of the obstruction of

23   justice.

24          So, therefore, there was no other person that he

25   would have had, as we would normally see in conspiracy, that

1    are doing overt acts to engage in the type of crime in which

2    he was convicted of.  She did nothing, in essence, of any

3    overt acts that would have led successfully to his not being

4    prosecuted or her not coming or her not testifying.

5         What the essence of how this enhancement is, is

6    that the government is going to maintain because he asked

7    her to do certain things, such as getting a notary or making

8    sure that it was notarized, which was never done.  There was

9    nothing that was organized or led or instructed that was

10   done as, again, as an overt act by any other person but the

11   defendant's request on the telephone.

12        I certainly would indicate to the Court that I

13   don't think that that's the basis of what this enhancement

14   encompasses.  This enhancement, as I read, basically goes to

15   where there are overt acts that are done under the

16   instructions of a main person, a ringleader, a manager, the

17   person who sort of like is in charge of the conspiracy, and

18   the other person followed in tow to what that person is

19   asking them to do their part of the conspiracy or their part

20   of the crime.

21        The witness that testified never performed or did

22   any criminal act or overt acts that led -- she was -- other

23   than simply listening to the defendant and agreeing with him

24   at times, yeah, I see what you're talking about, yeah, or I

25   don't want to get in trouble, things of that nature.  But

there was nothing that was done that he instructed to be done.  So I certainly don't think that this is a true representation of what this enhancement is for.

THE COURT:  Let me ask you a couple of questions along those lines because I have some concerns about it. Basically, your concern is that they may take it a step further.  Who you are talking about now is the girlfriend?

MR. SAMS:  That's correct.

THE COURT:  This is the telephone call, and he was telling her to do things.  She went along with it, but she never actually did any of the things that he told her to do. She went to, what was it, her mother.  Anyway, she reported it.

MR. SAMS:  Right.  He had asked her to record.  He said record things.  She didn't do that.  He asked her to get a statement notarized.  She didn't do that.  I mean, there was a gentleman, I don't know if it was a relative of his.

THE COURT:  I think his cousin.  I was going to go through each one of them.

MR. SAMS:  Right.

THE COURT:  Then his sister, remember there was his sister.  Didn't they come to serve process there or something?

MR. SAMS:  But that wasn't asked by the defendant.

1    That was one that the girlfriend indicated that the sister

2    had done on her own.

3              THE COURT:  Okay.

4              MR. SAMS:  That was nothing that -- there was no

5    evidence that the defendant told the sister to go, you know,

6    do something or make some act or some request from the

7    defendant.  I know that there was testimony as to when she

8    got service of process and how she got it and that the

9    sister, from my understanding, I guess it was the sister who

10   had brought it over to her sometime prior to this trial.

11             THE COURT:  Because the United States, and it was

12   included, and all these are proper to include because they

13   are matters at trial.  It's just now resolving them whether

14   they merit the enhancement.  So Ms. McCarr, I totally

15   understand, is a telephone call recording and basically

16   asking her to do something, and she didn't really do a lot

17   of it, if anything.

18             MR. SAMS:  Well, actually, from my understanding,

19   she really didn't do any of the things he asked her to.  She

20   engaged in conversations with him, and at times she agreed

21   with him about certain things that he had requested her to

22   do, but she never did any of them.  In the end she even said

23   that she didn't want to do it because she was scared of it.

24   But there was no overt acts, again, that she committed or

25   that she did in his request or at his request.

1          THE COURT:  Now, the next is his sister, and you're

2    saying there she did that on her own, that Mr. Perry hadn't

3    requested her to do anything.  That was action that she took

4    on her own?

5          MR. SAMS:  Right.  In fact, from my understanding,

6    the witness testified that that's when she became a little

7    apprehensive or afraid because she felt that she was being

8    pressured by the family, and that she was here alone by

9    herself and didn't have any family or friends outside of

10   Mr. Perry's family.

11         So I don't think there was ever introduced by any

12   government witness that this was something that Mr. Perry

13   instructed the sister to do.  I know that that was part of

14   her, what the witness testified as reasons why she became,

15   you know, suspect or became a little afraid or uneasy being

16   with the family and felt that they were not acting in her

17   best interest.

18         THE COURT:  The next is his cousin.

19         MR. SAMS:  Right.

20         THE COURT:  That was the one I think that was going

21   to get something notarized that was never done.

22         MR. SAMS:  And that's the point that I'm making to

23   the Court, that usually, my reading of this enhancement is

24   where there are acts that are done under the direction of

25   the organizer, the person who puts it all into place, and

1   these persons commit certain acts that can been attributed

2   to his or her instruction.

3         THE COURT:  You don't always have to accomplish an

4   act.  I'm not disagreeing with what you said, but the fact

5   that this is not a four- or three-level enhancement for an

6   organizer or leader.  This is the enhancement for, and I

7   know what you're saying, a conspiracy where everybody's in

8   the conspiracy, everybody becomes responsible for the amount

9   of drugs or criminal activity that was conducted during the

10  course of the conspiracy while it was reasonably anticipated

11  when they were a member, and they are all responsible for

12  it, but then you have somebody who gets enhanced because

13  they are more responsible for it, they are organizing, they

14  are leading, and there are five or more participants.

15        This is other than that described in (a) or (b)

16  under 3B.  So let's go look at that guideline right now.  I

17  still have other questions about it, too, but this is under

18  3B1.1(c).  This is just the general enhancement that isn't

19  encompassed by somebody being the organizer or leader of

20  something, which you're arguing a more extensive, that's the

21  four level, then there is the three level.  This is just the

22  two level.

23        So what you're saying is that he wasn't organizing,

24  leading, managing, or supervising in any criminal activity.

25  He was making a request.  It's just making a point of what

1    it is.  So when I looked at it, what I had questions about

2    is he's already convicted now of count two of witness

3    tampering, count three of witness tampering, and count four

4    of witness tampering.  So he's already been convicted of

5    tampering, and then count five, an obstruction of justice.

6         So I'm having a hard time seeing how it makes him a

7    leader or an organizer.  He's already been convicted of

8    these.  He's also unobjected to getting his obstruction of

9    justice enhancements.  It just seems like to me that, I

10   don't want to say double counting or double putting it on,

11   but he's already had the three witness tamperings.  I don't

12   know how that makes him a leader.  He got convicted of

13   those, and he got convicted of obstruction of justice.  He

14   has two obstruction of justice enhancements.

15        So I'm trying to figure out what he was a leader of

16   in a criminal activity because, as you say, nobody carried

17   through with what he asked.  He obviously wasn't a very good

18   leader or supervisor because nobody carried it through.

19   There's no conviction on them.  There is no charge with

20   conspiracy to obstruct justice.  There is no charge with

21   conspiracy to tamper with witnesses.  None of these people

22   have any criminal activity, at least they haven't been

23   charged, they haven't been convicted of criminal activity.

24   He's the one that's convicted of the criminal activity, then

25   how can he also be the organizer, leader, manager or

1    supervisor in any criminal activity because it was criminal

2    what he asked them to do but nobody did it.  He's already

3    had three convictions for it.  They weren't convicted.

4         It's not like a conspiracy where you've got guilty

5    pleas and everybody being convicted of the conspiracy and

6    then there's one as you were arguing, Mr. Sams.  Here you've

7    already got the substantive convictions.  None of these

8    people have been charged or convicted of anything, and he's

9    got an obstruction of justice.

10        So I guess I'm agreeing with you.  I don't

11   understand how he's a leader or organizer of a criminal

12   activity because the only criminal activity that's been

13   proven is what he did.  He might have led himself.  He might

14   have organized and supervised himself.

15        The jury found beyond a reasonable doubt that he

16   was guilty of these, but I don't understand how the

17   enhancement would apply.  So I guess I'm agreeing with you,

18   but I'm taking it one step further in the analysis to say

19   he's already been convicted of these three.  He's already

20   been convicted of obstruction of justice.  He's gotten his

21   obstruction of justice enhancements.

22        I don't know how this is a criminal activity other

23   than his own, and he's been convicted.  It just seems like

24   to me, I don't want to say double jeopardy or double

25   counting, I don't know the term exactly for it, but it just

1    doesn't seem to me that it is an appropriate enhancement for

2    what went on here.

3            MR. SAMS:  Your Honor, even under the commentary

4    under Paragraph 2, it indicates that he has to exercise

5    management responsibility, or it could be either the

6    property, assets, or activities of the criminal

7    organization, and there certainly wasn't any evidence that

8    there was a criminal organization at any time in regards to

9    what he was convicted of.

10           THE COURT:  I read all those application notes.

11   That was part of what I am trying to get at, is that he had

12   the criminal activity, and he was convicted of it.

13           MR. SAMS:  Yes, Your Honor.

14           THE COURT:  He's going to be sentenced for it, and

15   he's been properly enhanced.  I don't understand how he

16   qualifies for the leader or organizer.  So that's what my

17   question was.  I want to hear from the United States.  There

18   may be cases out there, and nobody cited the case.  I wasn't

19   able to find a case on point with this.

20           MR. SAMS:  Thank you, Your Honor.

21           THE COURT:  Mr. Jackson.

22           MR. JACKSON:  Thank you, Your Honor.  So we submit

23   that the enhancement applies.  I've looked at the concerns

24   Your Honor raised and hopefully possibly convince Your Honor

25   of the government's position.  We will give it a shot and

1  see what happens.  First of all, we rely on 9A1, which is

2  the transcript, and then there was the corresponding

3  recording.

4         THE COURT:  Now, let me go to that exhibit that you

5  passed up here.  This is 9A1, the transcript.  I have that.

6         MR. JACKSON:  Yes.  So in this transcript, just to

7  paraphrase, Mr. Perry is directing Ms. McCarr to create

8  this, essentially what is a fraudulent affidavit that's

9  notarized recanting what she told to law enforcement

10 officers.  He then directs, who Ms. McCarr identified as his

11 cousin Juice, to essentially watch over her, make sure she

12 gets it done, make sure she gets it notarized.

13        Then he directs Juice to tell Fleek, his sister, to

14 be a witness so that she can come back next month, and they

15 can get this affidavit into evidence and defeat this

16 statement incriminating Mr. Perry.

17        So Mr. Perry clearly says that's what I am telling

18 her now.  She is not inviting her to do anything.  It is

19 telling her to do this.  I understand the Court's concern

20 that they didn't do it, but there is a conspiracy here.

21 They agreed to do this.

22        THE COURT:  There's so much evidence here, and

23 Ms. McCarr testified.  She was afraid.  She had her family

24 down there, and it was something I remember where she had

25 seen somebody, and she was actually afraid of the cousin or

1   whoever it was, one of his associates or right-hand people,

2   and I think it was the cousin, but she had seen him before.

3   Juice, who was the cousin, as it turned out, is in this

4   conversation.  He was down there with her.  She was afraid.

5   She testified that she was afraid.

6          Obviously, I mean, I found her to be a credible

7   witness, and I believe the jury found her to be a credible

8   witness because there's been these convictions.

9          THE DEFENDANT:  (Mumbling)

10          THE COURT:  Tell me what line in here that you say

11   causes him to be a -- I mean, "I need you to do these

12   things."  He's asking people to do some things, but they

13   didn't do them, so he wasn't much of a leader, was he?

14          MR. JACKSON:  I understand, Your Honor.  Maybe he

15   wasn't much of a leader, but he was to Ms. McCarr.  She

16   admitted that she did not go to any of the state court

17   proceedings she was subpoenaed to in her testimony.  He was

18   successful at directing her not to show up.

19          THE COURT:  He was convicted of those.  What I'm

20   trying to say is you've got substantive convictions.  You've

21   got three witness tamperings, you've got an obstruction of

22   justice.  So he was convicted of what he tried to do, but

23   there's been no overall charge here of a conspiracy to

24   obstruct justice, that any of these people actually

25   participated in it, not that they willingly joined the

 1    conspiracy or whatever is going on here.

 2           MR. JACKSON:  Let me back up.  I don't think it

 3    matters that he was convicted or not convicted of a certain

 4    crime to receive an enhancement for that crime.  That's why

 5    it's the relevant conduct principles.

 6           THE COURT:  I agree with that.  That's why the

 7    obstruction of justice enhancements are there, and they're

 8    not objecting to them.  But they have objected to him being

 9    the leader or organizer of a criminal activity because, in

10    point of fact, and I don't want to keep repeating myself, he

11    did do certain criminal things, and he was convicted of

12    them, at least by the jury beyond a reasonable doubt.

13           That doesn't mean that he is a leader or a manager

14    of the criminal activity.  He tried to lead it and tried to

15    manage it, and he didn't do very well.  You're convicting

16    him on four substantive convictions and the obstruction of

17    justice.  Yes, he did do that.

18           Anyway, I'm having a hard time how Mr. Perry is a

19    leader or organizer of anything but his own criminal

20    activity.

21           MR. JACKSON:  I understand.  So what I'm

22    understanding is because Mr. Perry acted upon Ms. McCarr, we

23    can't count her as someone he was directing to do as part of

24    this?

25           THE COURT:  I don't have to answer questions.

1          MR. JACKSON:  I understand.

2          THE COURT:  Don't ask me a question.

3          MR. JACKSON:  Yes.  I want to clarify another

4    thing, and that is there is two different individuals.

5    There is Juice and then there is the person named Black.

6    Black is the person who escorted Ms. Perry down to Georgia.

7    Black is the person that Mr. Perry was using to strike fear

8    in Ms. McCarr about what Mr. Perry can do from custody.

9    Black is the person who Ms. McCarr testified is somebody who

10   is very scary and somebody who she is afraid of.  I would

11   submit that Black is another person that Mr. Perry is

12   directing to do this.

13         THE COURT:  Is there any other argument you want to

14   make?

15         MR. JACKSON:  No, Your Honor.

16         THE COURT:  I would sustain this objection because

17   I don't find by a preponderance of the evidence that he was

18   a leader, organizer, supervisor, or manager in any criminal

19   activity.  No one else has been charged here.  No one else

20   has been convicted here.  It was all directed or Mr. Perry

21   asked people to do, and, frankly, they didn't do it.  I know

22   that Ms. McCarr didn't show up because she was afraid, but

23   ultimately she did show up.  She testified here.

24         There has just been no showing of a criminal

25   activity for which he was an organizer, leader, manager, or

supervisor.  He did these things on his own.  He's been

convicted of three counts of witness tampering.  He's been

convicted of obstruction of justice.  He has an enhancement

for that.  I find that the leadership enhancement, it's just

not appropriate under the facts of this case, and I would

sustain the objection.

Now let's move to the next objection you have to

the recklessly fleeing enhancement.  Who is going to argue

that one for the defendant?

MR. ROBINSON:  I will, Judge.

THE COURT:  All right.

MR. ROBINSON:  Judge, our third and final objection

is that there was not sufficient or credible evidence which

prove that Mr. Perry was the operator of the vehicle that

allegedly eluded police.  I know the jury saw the body cam

footage about a very brief encounter at first sight with law

enforcement, the suspect vehicle.

The vehicle did increase speed, but there was no

testimony as to approximate speeds or approximate times at

which the vehicle was lost sight of.  A vehicle was then

found in a parking lot, and at that time Mr. Perry's

girlfriend was seen coming from the driver's side of the

vehicle and then Mr. Perry coming from the driver's door of

the vehicle.  That, in and of itself, does not sufficiently

show that there was an eluding in this particular case.  I

1   don't think a brief increase of speed would be sufficient to

2   satisfy an allegation of eluding.  That would be our

3   position, Judge.

4           THE COURT:  Thank you.

5           Before you argue, let me give you my perspective,

6   Mr. Jackson, on the enhancement, and if there's anything

7   that you think is necessary to add.  As I read the

8   defendant's position paper and the argument here, they say

9   in the position paper that they basically argue there was no

10  credible evidence that the defendant was operating the

11  vehicle.  That is in their position paper at ECF Number 224

12  at 2.

13          I read the position paper that the defendant seems

14  to acknowledge that the reckless endangerment enhancement

15  would apply if he were the driver of the SUV that sped

16  through a residential neighborhood, and we all saw the

17  video, sped through a residential neighborhood, ran through

18  two stop signs while fleeing from the police.

19          So the evidence was that he was at a high rate of

20  speed, that was testified to.  We've all seen the video.

21  There are stop signs involved.  There is a residential area.

22  The real issue to me seems not reckless endangerment but

23  whether he was the driver.  The United States' point, and I

24  was the trial judge, and I heard it all, I saw the video,

25  and all of the testimony, Ms. McCarr's trial testimony in

1    particular that I've said I found credible, that she states

2    specifically he was the driver, and defendant's own recorded

3    admission, as I recall, to the officers, and I think you

4    argued that, that he and Ms. McCarr had switched places to

5    try to knock the officers off.

6            Now, I find that clearly by a preponderance of the

7    evidence that that shows, number one, the video and the

8    running through stop signs in a residential area is reckless

9    endangerment, and the credible testimony at trial has not

10   been refuted.  It's just an argument.  It hasn't been

11   refuted.  The argument is, you shouldn't believe her, but

12   obviously the jury believed a lot of her testimony.  I'm not

13   saying how, what, and all, but I heard it, and I find

14   Ms. McCarr credible.  This is the preponderance of the

15   evidence standard.

16           I would find that they have a very weak argument he

17   wasn't the driver, and particularly his own recorded

18   admission.

19           THE DEFENDANT:  (Mumbling)

20           THE COURT:  I know that's in evidence.  Is there

21   anything that you have to add to that?

22           MR. JACKSON:  No, Your Honor.

23           THE COURT:  Then I accept your position in your

24   position paper, being the trial judge, having seen and heard

25   all of that evidence, having reviewed all of that evidence,

1    and I would find by a preponderance of the evidence that

2    Mr. Perry was the driver.  It was from a lay person's view

3    of everything and what was going on and being said.  There

4    was speed.  It was in a residential area, and there were

5    stop signs.  So I would find clearly by a preponderance of

6    the evidence that there was the reckless endangerment and

7    fleeing from law enforcement officers and that that

8    enhancement is appropriate.

9              MR. JACKSON:  Thank you, Your Honor.

10             THE COURT:  That leaves us with two.  Let me get my

11   paperwork because I've got a lot here.  Were there any of

12   these exhibits you wanted me to look at or you have already

13   shown me the ones you wanted me to see?

14             MR. JACKSON:  Just the ones we showed you, Your

15   Honor.

16             THE COURT:  Did you want them admitted?

17             MR. JACKSON:  Yes, please.

18             THE COURT:  So let's see what you've got admitted

19   here.  You've got Government's Exhibit 2E.  This is his

20   admission where he jumps over the console to the passenger

21   side.

22             MR. JACKSON:  Yes.

23             THE COURT:  Then I will admit Government 2E.  This,

24   again, is all part of the trial evidence, but I'll admit it

25   for this hearing.

```
 1              (Government's Exhibit 2E received in evidence.)
 2              THE COURT:  What was this picture?  What was the
 3    exhibit number on the picture?
 4              MR. JACKSON:  It's in the bottom right corner, 6D.
 5              THE COURT:  6D.  I'll admit this picture 6D that
 6    you relied upon.
 7              (Government's Exhibit 6D received in evidence.)
 8              THE COURT:  I'll admit 9A1.  This is the recording
 9    of the telephone call with Ms. McCarr.  I realize that when
10    I admit them that they are over your objection, if you've
11    made the objection to the enhancement, but you've clearly
12    prevailed on two of them.
13              (Government's Exhibit 9A1 received in evidence.)
14              MR. JACKSON:  6E, as well, which is the picture of
15    the guns, magazines, and marijuana.  You mentioned that when
16    you were going through.
17              THE COURT:  You didn't mention this at all.
18              MR. JACKSON:  I did.  I cited that in my argument.
19              THE COURT:  No, I don't recall you mentioning this
20    gun with the marijuana bags.  It wasn't one of the selfies.
21    I don't recall you mentioning 6E or referring to it.  Even
22    if you didn't mention it, here is this one.  6E is the gun
23    on top of a safe with a drink beside it, crackers, cheese,
24    and little Baggies of marijuana.
25              MR. JACKSON:  Yes.
```

```
 1              THE COURT:  You didn't argue that.
 2              MR. JACKSON:  You're probably right, Your Honor.
 3    Disregard it.  We don't have to put it in evidence.
 4              THE COURT:  I'm not admitting 6E, so that's not
 5    admitted.  Okay.
 6              MR. JACKSON:  Thank you.
 7              THE COURT:  Let me see if there is anything else
 8    before you step down.
 9              So based on those, we will change the PSR,
10    Mr. Noll.  What I would have is that by sustaining the two
11    objections, we go to an offense level of 30.
12              THE PROBATION OFFICER:  That's correct.
13              THE COURT:  With a criminal history category of
14    six, which would change the guideline range.  So let's make
15    the changes in the report, and then we will go from there to
16    sentencing.
17              THE PROBATION OFFICER:  First one would be on Page
18    8, Paragraph 23.  I would recommend just striking through
19    the paragraph.
20              On Page 9, Paragraph 29, that enhancement was
21    removed.  Same page, Paragraph 33, that enhancement was
22    removed.  Same page, Paragraph 36, that will now be level
23    30.  Page 10, Paragraph 43, the row that says count one
24    through five is a 34 there, that is now a 30.  Paragraph 44
25    is a 30.  Paragraph 46 is a 30.  Paragraph 49 is a 30.
```

1          Then we go to Page 33, Paragraph 123.  That total
2    offense level should be a 30.  Then the custody should be
3    168 to 210 months.  The fine range is now 30,000 to 250,000.
4    That's all.
5          THE COURT:  Thank you.
6          Then that has the guidelines calculated, which the
7    Court is required to do, at a total offense level of 30, a
8    criminal history category of six.  There is a 168 to 210
9    months guideline range.  I changed the fine, but that's
10   really not applicable here because of his indigency.
11         The statutory maximums are 10 years on count one;
12   20 years on counts two, three, four and five; and 15 days to
13   two years on count six.
14         MR. JACKSON:  Yes, Your Honor.
15         THE COURT:  I know that you have argued for a
16   variance.  Do you want to separately argue the sentencing
17   factors under 18, United States Code, Section 3553(a) and
18   the variance with those, or do you want to argue it
19   separately?
20         MR. JACKSON:  I can argue the variance with the
21   3553(a) factors, Your Honor.
22         THE COURT:  Then I would ask you is there any other
23   evidence that you want to present other than argument for
24   sentencing?
25         MR. JACKSON:  Just argument, Your Honor.

1          THE COURT:  Mr. Sams or Mr. Robinson, is there any
2   evidence that you wish to present for sentencing other than
3   argument?
4          MR. SAMS:  No, Your Honor.
5          MR. ROBINSON:  No, Your Honor.
6          THE COURT:  Then you can go forward, Mr. Jackson,
7   with your argument.
8          MR. JACKSON:  Thank you, Your Honor.  Your Honor,
9   we ask that the Court depart upward or vary upward to a
10  sentence of 30 years in prison.  I understand the guidelines
11  have dropped, but we think that the defendant's conduct here
12  still warrants a 30-year sentence, and I'll go through the
13  factors, and I'll explain why this is a unique situation
14  that is probably unlike anything that the Court or the
15  Circuit, in my reach haven't founding anything like this
16  before, at the very least, and why something above the
17  guidelines is warranted here.
18         The first is the nature and circumstances of the
19  offense.  Now, this started with a firearm crime.  Then it
20  evolved into an obstruction scheme where the defendant did
21  everything in his power to convince Ms. McCarr to obstruct
22  justice for him, and for him to obstruct justice through
23  keeping her from testifying, avoiding subpoenas, trying to
24  write this fraudulent affidavit, trying to record the state
25  prosecutor --

1          THE DEFENDANT:   (Mumbling)

2          MR. JACKSON:  -- to using his family members to

3     pressure her.  She testified that she felt unsafe.  They

4     turned on her when they realized that she was either not

5     going to listen to Mr. Perry or follow what the government

6     was asking her to do.

7          As I pointed out before, he successfully convinced

8     her to not appear even though she was subpoenaed in state

9     proceedings.  It wasn't until this case was transferred to

10    federal court, that she was adopted federally, that she

11    started listening, and she did what we asked her to do.  She

12    testified in Grand Jury, she testified in trial, and she

13    turned over the cell phone, providing all that additional

14    evidence.

15         THE DEFENDANT:  Illegal evidence.

16         MR. JACKSON:  So he gets an obstruction

17    enhancement.  Then things turn violent.  You heard evidence

18    from Ms. McCarr that he pulled a gun on her, threatened to

19    kill her if she left him.  He saw in her eye that she was

20    planning on running, and certainly that affected her

21    thinking.  She's more likely to be compliant if she is under

22    threat of death and knows that Mr. Perry is capable of

23    killing her.  So there is that violent aspect as well.

24         We have other violent aspects, and that's where the

25    attorneys come in.  We know that he threatened to kill his

1    attorney in state court, and then when he was asked about

2    that by the forensic psychologist, he said he was perfectly

3    fine with that, if it would get the attorney to listen to

4    him to do what he asked, to do what he wanted, that he is

5    fine with threatening to kill them.  He is fine with threats

6    of violence.  That's a depraved individual.

7            Killing a person who is the last line of defense

8    literally, when it comes to charges from the government,

9    criminal charges.  So then we go to federal court.  We have

10   Lawrence Woodward.  Mr. Perry mails him threatening letters,

11   threatens to send people to his offices for his employees,

12   tries to attack him in jail, attacks him in court, lunges at

13   him.  That's assault.

14           THE DEFENDANT:  (Mumbling)

15           MR. JACKSON:  That is assault, common law assault,

16   to put Mr. Woodward in reasonable fear for his life.

17           THE DEFENDANT:  (Mumbling)

18           MR. JACKSON:  So Mr. Woodward is out, and they call

19   us.  We know that after one of the proceedings Mr. Perry

20   threatened to break his face, even though Mr. Hobbs had

21   successfully done what Mr. Perry wanted him to.  He withdrew

22   from the case.  And Mr. Perry was still looking for blood.

23           We have Mr. Babineau.  We have video of him taking

24   his shoe off and trying to break down the glass trying to

25   get Mr. Babineau.  We have threats, letter threats to him,

1    as well, sending people to his office.  We have Mr. Damien

2    Robinson.   Mr. Perry knows Damien Robinson's family.

3    Mr. Robinson said he put Mr. Robinson in reasonable fear for

4    his and his family's life.

5         So who's next?  Mr. Trevor Robinson, who is still

6    here, there's threats against him, too.  There was threats

7    against him in state court.  Mr. Perry has a history of

8    threatening all of his attorneys, whether it is in state

9    court, whether it's years ago, whether it's now, he is going

10   to threaten everyone.

11        THE DEFENDANT:   (Mumbling)

12        MR. JACKSON:  My point I'm trying to make is that

13   nobody is safe, even those who are trying to help Mr. Perry

14   defend him, court-appointed counsel who are giving up other

15   opportunities to defend Mr. Perry, now they're in reasonable

16   fear for their lives, for their employees' lives, and their

17   families' lives.  Then we have a guidelines example from

18   extortion where there is a threat to family, then you should

19   get -- an upward departure is warranted.  Cited that as an

20   example.

21        THE COURT:  You kind of ran your words together

22   there.

23        MR. JACKSON:  Sure.  So I highlighted in my motion.

24        THE COURT:  You said the state probation officer

25   and then you were saying something.  You talk so quickly and

1    ran the words together, I'm not sure what you said your last

2    sentence.

3           MR. JACKSON:  Yes, I'll repeat myself.  What I was

4    saying was there is an example in the guidelines range.

5    There is an extortion example.  The extortion guidelines

6    there is an example where threats to family members warrant

7    an upward departure.

8           So I submit that not only do we have threats to

9    attorneys but to their employees, and, as Mr. Robinson said,

10   threats to family members.  The same reason would apply to

11   what we submit is 5K2.0 for an upward departure.

12          The reason Mr. Perry is threatening his attorneys,

13   one is -- and he said this before -- when the Court denies

14   the attorney's request to withdraw or they notice, they move

15   to inquire about their status, and Mr. Perry is not

16   satisfied with the result because the Court says there is

17   not enough justification for the attorney to withdraw, so

18   then Mr. Perry manufactures that justification, he

19   circumvents the Court's orders by threatening to kill his

20   attorneys, therefore creating a reason, improperly and

21   unlawfully, because threats are illegal, mailing threats are

22   illegal, attacking an attorney in the jail is illegal,

23   lunging at an attorney in federal court is a federal

24   offense, and by doing this he manufactures, through force or

25   wrongdoing or unclean hands or whatever, illegal conduct to

1    overall circumvent the Court's orders.

2            Your Honor also pointed out one good reason is to

3    slow down the proceedings.  3C1.1 literally says obstruct or

4    impede the proceedings.  I mean, he is impeding the

5    proceedings three years, almost to the day that he's

6    arrested, four years almost to the day.  We are finally here

7    at sentencing because of all his antics because every time

8    an attorney withdraws from the case, a new attorney comes

9    in, and we have to reset the clock, we have to do everything

10   over again, and then Mr. Perry wants his attorney to file

11   all of these frivolous motions.  Attorney says no, Mr. Perry

12   gets mad, Court says attorney can't withdraw, so Mr. Perry

13   threatens to kill that attorney, voila, we have another

14   withdrawal.

15           THE COURT:  Actually, it came to this Court in

16   2018.  So we are actually June or July of 2018.  So I can

17   tell you when.  July of 2018.  July 11th, 2018.  So we are

18   actually a little over three years.

19           MR. JACKSON:  Understood, Your Honor.  Thank you.

20   So I don't need to belabor the point.  I emphasize the

21   nature and circumstances of the offense.  It was a gun

22   offense, then it was an obstruction offense, and then it

23   became something unheard of, something that is absolutely

24   unacceptable, and that brings me to my next point, which is

25   the history and characteristics of the defendant.

1          As I highlighted in my position paper, he is a
2    *de facto* career criminal.  I mean, he commits crimes,
3    starting when he was very young, 11 or 12.  Even then these
4    are depraved crimes.  I mean, he is trying to steal a car.
5    When the police catch him, he runs over his friend and the
6    police officer trying to get away.  We are on a great start
7    there.
8          Then he commits more crimes and more crimes.  He
9    goes to drug crimes.  We have possession of cocaine.  Then
10   he goes to firearm crimes.  First possession of firearm,
11   then he graduates to shooting into an apartment.  The names
12   are caught on that one.  With a long rifle.  He keeps
13   getting caught with these long rifles.  He is not hunting.
14         What else is he going to do with the long rifles?
15   He's prosecuted in state court, then prosecuted in federal
16   court.  Judge Jackson gives him two years.  He gets off, he
17   violates state with impunity, he violates state probation
18   with impunity, violated federal probation with impunity to
19   the point where Judge Jackson throws his hands up and says
20   he cannot be monitored, he cannot be supervised, so we are
21   going to just sentence him to the max and then take him off
22   supervised release.
23         What does Mr. Perry do when he comes out?  He
24   commits these crimes.  I mean, it's so bad that his own
25   mother said that he threatened to set her on fire.  There is

1    nobody that is safe from Mr. Perry.

2         Moving on to deterrence, as I made clear, there is

3    no specific deterrence.  I don't know what this Court can do

4    to specifically deter Mr. Perry from committing new crimes.

5    I don't think there is anything.  I don't think there is any

6    sentence that can deter Mr. Perry from committing new

7    crimes.  I mean, he's committing crimes in court with

8    everyone sitting there watching him, while he's in chains.

9    He commits crimes.  There is no specific deterrence, and

10   that's why general deterrence is paramount.  That's why we

11   asked for this lengthy sentence because it sends a message

12   to everyone else considering threatening their attorney that

13   they are going to get the hammer if they do that.

14        THE DEFENDANT:  (Mumbling)

15        MR. JACKSON:  That turns us to protecting the

16   public from the defendant's future crimes because the

17   specific deterrence is so unlikely that makes public safety

18   so much more important.  I mean, everyone is at risk for

19   Mr. Perry, even when he's in jail.

20        Demonstrating respect for the law is my last point.

21   I mean, Mr. Perry's been disrespectful at every stage of the

22   proceeding.  I mean, he has yelled at everyone.  He's been

23   removed from the courtroom.  He's attacked his attorneys in

24   jail, in court.  He's threatened to kill his attorneys.  I

25   mean, this is the most disrespectful defendant when it comes

1    to the law.  He has no respect for the Court system, and he

2    has no respect for the justice system.  A 30-year sentence

3    would show that respect.  For these reasons we ask that the

4    Court either depart upward or vary upward from the

5    guidelines range to 30 years in prison.  Thank you.

6           MR. ROBINSON:  Your Honor, there is no question

7    that this was a hotly contested matter.  We were able to get

8    through it.  The jury has rendered their decision, found him

9    guilty, and we are here to decide what is necessary and

10   proper for purposes of sentencing Mr. Perry.

11          Now, the government has made reference to his most

12   recent case in the Norfolk Circuit Court, a case which I did

13   represent him at one time.  I did not see the case through

14   to its completion, but he was convicted only of a possession

15   of firearm by convicted felon.

16          Now, looking at Page 21 of the presentence report,

17   at the time it does reference the stipulation of facts that

18   were filed in conjunction with his plea of guilty which

19   resulted in the sentence that was pronounced.  He had a

20   five-year sentence with three years of that suspended.  He

21   served two years in the Department of Corrections.

22          Now, it does indicate, copied from the stipulation

23   of facts that, "Perry and Anthony Myrick drove to the 7400

24   block of Fenner Street and fired numerous rounds in the

25   direction of apartments there."  Now, that was information

1    contained only in the stipulation of facts.  As the Court

2    knows, in the state prosecution, stipulations of facts are

3    not admitted to.  They are only part of the record so that

4    the Court has a basis to support a plea of guilty.  It is

5    only an agreement that that's what the evidence would have

6    been had the case gone to trial.  There was no admission

7    that he engaged in such conduct.

8           The vehicle that Mr. Perry was operating was

9    stopped after the confrontation, alleged confrontation among

10   Mr. Myrick and Mr. Perry and these other individuals, and

11   that a firearm was found in the vehicle, and that is how he

12   was charged with that offense.  He was charged with other

13   offenses, including shooting into an occupied dwelling, but

14   those charges were nolle prossed.

15          THE COURT:  Well, let me ask you a question.  We

16   are on Page 20, and this is the conduct that occurred on

17   11-28-2015.  He was convicted of a possession of a firearm

18   by a convicted felon.

19          MR. ROBINSON:  Correct.

20          THE COURT:  He had five years consecutive with all

21   other sentences and three years suspended, so he had two

22   years on that.

23          MR. ROBINSON:  Yes.

24          THE COURT:  Then there was a nolle prossed,

25   discharging a firearm in an occupied building.  There was

1    six months, all suspended on good behavior for ten years,

2    which obviously I'm not sure that's occurred, but that's not

3    up to me to decide.  It was suspended.  Reckless handling of

4    a firearm was dismissed.  Discharge of a firearm in public

5    was dismissed.  But then for the same offense on November

6    28, 2015, it looks like there's a felon in possession of

7    ammunition.  Was that all part of the same proceeding,

8    because it was in possession of ammunition for which he

9    received five years consecutive to all other sentences,

10   suspended, or a condition upon being good behavior for ten

11   years.

12          So basically the only thing he got for all of that

13   was a five-year sentence with three years suspended?

14          MR. ROBINSON:  Yes, Judge.

15          THE COURT:  There's probation issues out there.

16   Then because of the concurrent jurisdiction, the matter was

17   then turned over for a federal prosecution.  Of course, it

18   has snowballed into many other charges and problems, which

19   the Court is of the opinion Mr. Perry was the architect of

20   his own problems with all of these other convictions.  It

21   started out on the first indictment, what was the charge

22   here?

23          MR. JACKSON:  Felon in possession of a firearm,

24   Your Honor.

25          THE COURT:  Then all of these other things have

```
 1   snowballed from it, the witness tampering, the obstruction

 2   of justice.

 3           MR. JACKSON:  Yes, Your Honor.

 4           THE COURT:  I just wanted to make that clear from

 5   the record while this one charge under the concurrent

 6   jurisdiction, because there had been federal prosecutions

 7   came over here, it then snowballed into the superseding

 8   indictment due to much of the conduct that Mr. Jackson has

 9   referred to other than the matters with the attorneys.

10           MR. ROBINSON:  Correct, Judge.  I just wanted to

11   clarify and make sure that the Court has the proper context

12   with the allegation of Mr. Perry and Mr. Myrick shooting at

13   an occupied dwelling.  I can share with the Court my

14   recollection of the evidence in that case.  There was some

15   street cam video footage.

16           THE COURT:  That's not the case before this Court.

17           MR. ROBINSON:  It's not, Judge, but the government

18   has made reference and tried to create a fact that Mr. Perry

19   was firing a weapon at someone previously.  That information

20   was only taken from the stipulation of facts for a charge

21   that was nolle prossed.

22           THE COURT:  They were arguing that, I believe, for

23   their upward variance.

24           MR. ROBINSON:  True.  As I said, that was only an

25   allegation.  There had been no admission to that conduct.
```

1          THE COURT:  I understand.  What I'm saying is that

2     this was the conduct that was dealt with in state court for

3     however and for whatever, and it came over here on the felon

4     in possession of a firearm.

5          MR. ROBINSON:  Very well, Judge.  I'll move on.

6          THE COURT:  I'm not looking at Mr. Myrick or any of

7     that.  That's not been introduced for me except here in the

8     presentence report to give me the context of what the

9     conviction was about.

10          MR. ROBINSON:  Sure.  I know that the government

11     and the Court has a concern of my client's criminal history.

12     I know that the Court can look at past acts to determine

13     whether or not they are or will be a danger in the future.

14     I would say that a mitigating factor in this, although it

15     may not necessarily be obvious today, is that Mr. Sams and I

16     have had several consultations with Mr. Perry, and they have

17     evolved from the beginning to now.

18          We have noticed a change in his tone.  He's been

19     more cooperative and very constructive in how we are going

20     to get through this process.  So at the very least Mr. Sams

21     and I have seen some redeeming qualities in Mr. Perry.  We

22     know he has an ability to make good decisions.  The question

23     is when will he start to make them.  I'll submit that he's

24     already started that.

25          So we have to fashion a sentence today that will

1    both punish and rehabilitate.  I think that he may already

2    be well on his way to rehabilitating himself.  He does have

3    some mental health concerns that he will need to address in

4    the Bureau of Prisons for -- we have to look at how much

5    time will be necessary to both punish and rehabilitate.  The

6    advisory guidelines after adjustment at this point are now

7    168 months to 210 months.

8          Our position, or the defendant's position on

9    sentencing is the same as stated in our position paper, that

10   he should be sentenced to a period of incarceration at or

11   below the low end of the sentencing guidelines at 168 months

12   as adjusted, that you take into account the relevant

13   conduct, some of which were prevailed on the objections by

14   the defense bringing down the offense level.

15         We submit that that is fair and just and adequately

16   balances the scale of justice.  I know that there are some

17   aggravating factors here given the history of this matter

18   and difficulty that we have had in getting this case tried

19   and get to the sentencing process, but we have gotten there,

20   Judge, and we submit that that would be an adequate sentence

21   at or below the low end of the sentencing guidelines, Judge.

22         THE COURT:  All right.  Mr. Jackson.

23         MR. JACKSON:  Nothing further, Your Honor.

24         THE COURT:  Mr. Perry, you can remove your mask,

25   and you have the microphone there.  Is there anything that

```
 1    you would like to say before I pronounce sentence?

 2              THE DEFENDANT:  Yes, ma'am.

 3              THE COURT:  Go ahead.

 4              THE DEFENDANT:  First I would like to say, as far

 5    as this whole ordeal, he said that I did this, Mr. Jackson's

 6    disposition was I did this, I did that throughout this whole

 7    ordeal, and that he testified, well, he just said that I

 8    tried to basically, like, circumvent this whole process, you

 9    know what I'm saying.  I feel like I was never granted a

10    fair trial because from the beginning I wasn't even able to

11    address the police officers who arrested me that night

12    because he perjured.  They offered me a plea.  I didn't

13    accept it because he lied, you know what I'm saying.

14              But at so many different points throughout this

15    case, Mr. Jackson and Mr. DePadilla has been able to change

16    their disposition on a lot of things throughout this case,

17    and they have been getting away with it, and they have been

18    getting away with it.  So I'm not going to sit here and act

19    like I wasn't upset, because I was.  And I feel like at the

20    end of the day a lot of that evidence that was put on at my

21    trial, if the same evidence that was put on at my first

22    suppression hearing would have came out or came out during

23    trial, the whole outcome of my trial would have been

24    different.

25              But being that my lawyers, my two attorneys wasn't
```

```
1    able to put on certain evidence outside of the trial to even
2    combat half of the things that Mr. Jackson put on, he put on
3    clippings of 30-second clippings of the phone call, but he
4    keeps saying that I made her do this, I made her do that.
5    Half the things that were said I just agreed to it.  I
6    didn't make her lie to the feds.  She doesn't have a sister.
7    I didn't make her do any of that, you see what I'm saying?
8    But at every point of this procedure he has been able to
9    change his disposition 30 times.  I don't understand it.  I
10   don't feel like it's fair.
11            THE COURT:  Let me just ask you one thing,
12   Mr. Perry.  Just kind of lower your voice because I have
13   seen an improvement today, and that's in your favor, your
14   attorneys have said.  But don't get yourself so riled up and
15   don't raise your voice like that.  I'm listening to you.
16            THE DEFENDANT:  Just like even with the motion that
17   he filed for the upward departure, my sentencing date was
18   November the 17th.  I called Trevor -- well, I actually got
19   them to set up a call for my attorney to Mr. Sams on
20   November the 10th.  When I called, I was connected to them.
21   I spoke with them for a second.  He spoke to Trevor.  Then
22   they informed me that my sentencing date had been continued
23   to today, and that was November the 10th.  That was seven
24   days before my actual sentencing date.
25            Then on November the 19th, they -- the prosecution
```

1    put in his motion for this after we argued most of the

2    things that I read over the PSR.  I didn't talk to them when

3    they came to do the PSR.  When they brought it to me, I just

4    got it and went back to my cell, and I told them, well, I

5    don't think this is right, I don't think that is right, I

6    want you to argue this, I want you to argue that.

7         Then my case was continued, and then Mr. Jackson

8    did the same thing once again, as in, okay, well, he thinks

9    that he shouldn't get this, he shouldn't get that.  So then

10   he used these same tactics again.  I feel like that is just

11   malicious prosecution, and that's -- and at the end of the

12   day, whether I get the low end or 30 years or not, right is

13   right and wrong is wrong.  You don't have to like me, and I

14   don't have to like you, or nobody has to like anybody in

15   this matter.  I know that you have a job to do, but right is

16   right and wrong is wrong.  You didn't put that cop on the

17   stand because you knew he would lie, and that's what I'm

18   saying.

19        You know that half of the tactics that you used

20   wasn't right, but you continuously used them, even with the

21   cell phone evidence.  You continuously used them.  You knew

22   by putting me in front of a Magistrate Judge he couldn't

23   rule on it.  All he could do was make a recommendation.  But

24   you continuously used him.  And that's just all I'm saying.

25        At the end of the day I done already made peace

1    with myself.  No matter what you all do to me, you ain't

2    God.  You can't decide my fate, period.  Whether I walk out

3    of here and do a million years or drop dead, the only one I

4    can say so in that is God, and that's just my disposition on

5    this whole thing.

6              THE COURT:  Thank you, Mr. Perry.

7              One thing that I would note was that the sentencing

8    was continued because the court did not have a properly

9    equipped COVID courtroom on the original sentencing date

10   because we had criminal trials that was ongoing, and we

11   didn't have a proper courtroom for security and for COVID-19

12   proceedings that day, and that's why it was moved.

13             You would agree with that, counsel for the

14   defendant?

15             MR. ROBINSON:  Yes, Judge.  I think that his

16   concern is that the government's motion for upward departure

17   was filed after the original sentencing date was prepared.

18             THE COURT:  I understand that's his concern, but

19   you understand it was not an arbitrary continuance to allow

20   the government to file something.  It was filed afterwards.

21   He's made his point.  But they were entitled to file that

22   motion, and they could have actually requested it at the

23   sentencing, and the Court may have had to continue the

24   sentencing so you would have had notice of it, but they

25   actually could have requested it at the sentencing, and the

1    Court would have had to have told them they, you know, had

2    to put their reasons in writing and give you a chance to

3    respond.  You have had a chance to respond.  I don't know if

4    you included in your response, but I know you object to it,

5    and you've argued your objection today, and you had notice

6    of it.

7              MR. ROBINSON:  Yes, Judge.

8              THE COURT:  Let me check one thing.

9              In sentencing, Mr. Perry, the Court obviously has

10   to follow the sentencing statute as it does in every federal

11   felony case, which is 18, United States Code, Section

12   3553(a) and under those factors to determine a sentence that

13   is sufficient but not greater than necessary.

14             In sentencing I will consider the motion for an

15   upward departure or for an upward variance.  The United

16   States moves for an upward departure from the original

17   sentencing guideline range of 262 to 327 and request that a

18   360-month sentence, which would be a 30-year sentence, be

19   imposed.  The United States requests the Court to depart at

20   least two offense levels above the guideline range because

21   the defendant's case presents, quote, aggravating

22   circumstances not adequately taken into consideration by the

23   sentencing commission.

24             In addition, if the Court does not approve the

25   departure, then the United States alternatively requests an

1    upward variance as that would be sufficient but not greater

2    than necessary to the factors under 18, United States Code,

3    Section 3553.  So the United States has put its position in

4    writing, I have reviewed it, and they have argued it here.

5    It is considered a proper motion with the defense counsel

6    having an opportunity to respond.  However, in sentencing

7    the defendant, I'm going to follow the sentencing statute

8    and go through the factors in that statute and how they

9    weigh for and against the defendant.

10           I would note in so doing, I will not repeat

11   everything that's in the presentence report nor will I

12   repeat some of the argument that is made in previous

13   comments of counsel.  In determining a sentence that is

14   sufficient but not greater than necessary, the first is the

15   nature and circumstances of the offense and the history and

16   characteristics of the defendant.

17           The nature and circumstances of this offense are

18   disturbing.  One of the disturbing factors about it is that

19   Mr. Perry has escalated his own fate in many ways by his

20   conduct during these proceedings, starting out with an

21   indictment.  There were two counts in the indictment.  It

22   has been so long ago, but it was back in 2018, and as you

23   indicated before, one was convicted felon in possession of a

24   firearm and what was the other?

25           MR. JACKSON:  It was one of the witness tampering

1    counts, Your Honor.  I believe it was 18, United States

2    Code, Section 1512(b)(1).

3           THE COURT:  So, consequently, the conduct has just

4    escalated so much since the prosecution was undertaken in

5    federal court, and obviously the nature and circumstances of

6    the offenses are extremely serious.  The Court can't

7    overlook that you've got a very difficult situation

8    involving witness tampering.  You've got not only the felon

9    in possession of a firearm, and Mr. Perry, I'll go through

10   the criminal record, has been convicted in this court

11   before.  He's had the witness tampering.  Then on top of

12   that there was count three and count four for witness

13   tampering, count five for obstruction of justice, and then

14   count six charged him with possession of a controlled

15   substance, marijuana, obviously not the most serious of the

16   charges here.

17          The circumstances of this case, it's been pending

18   before this Court for over three years now.  I would agree

19   that in this Court's very lengthy tenure on the bench, I

20   don't know that I have experienced a case such as this that

21   took so long to get it to trial with so many different

22   attorneys and extremely experienced members of the bar of

23   court.  I'm looking at this in conjunction with other

24   factors, too.  The circumstances of the current offenses,

25   because many of them tied in with the witness tampering and

1    obstruction of justice.  The attorney matters would go more

2    to deterrence and promoting respect for the law.

3           One of the attorneys you didn't even mention

4    started out with a public defender, Mr. Grindrod.  So we

5    have here in this case, I believe there's been maybe six or

6    seven attorneys.  We started out with Mr. Grindrod, who is

7    an extremely experienced Federal Public Defender.  Then we

8    move to Mr. Woodward.  There was the chair thrown or

9    table-throwing incident and the threats.  Then we moved to

10   Mr. Hobbs.  There were threats there.  Then I think we move

11   to Mr. Babineau.  I'm looking at termination dates here with

12   so many attorneys.  I know we've had Mr. Grindrod,

13   Mr. Woodward, Mr. Hobbs, Mr. Babineau, Mr. Damien Robinson,

14   and finally the sixth attorney was Mr. Robinson, and because

15   of Mr. Perry's unhappiness at certain times, Mr. Robinson

16   was certainly willing to continue as the other attorneys

17   were not, frankly.  Then Mr. Sams was added, and we were

18   able to bring this proceeding to conclusion for sentencing

19   today after a lengthy jury trial.

20          I don't say that in terms of the nature and

21   circumstances of the offense except for the fact that so

22   much more has happened, and it's gotten so much worse with

23   the witness tampering when the superseding indictment was

24   filed, and then the history and characteristics of the

25   defendant in all of this threatening behavior, that has been

1   brought to the Court's attention through some of the

2   attorneys involved that this is a *modus operandi* for the

3   defendant.

4           So the offense here weighs against him.  Then his

5   history and characteristics, when you look at this criminal

6   record, it's really sad to the Court, it starts on Page 11

7   and goes up to Page 21.  I say this because it's a serious

8   criminal record, but it also saddens the Court that it's

9   still going on, and nothing has really been done to, in my

10  opinion, to help Mr. Perry.

11          I will certainly try to get that rehabilitative

12  help.  I understand, and I'll go through, he had a difficult

13  growing up, and the presentence report says he has a history

14  of not following the rules, and that history has proceeded

15  through this proceeding.  Because he started out, it's sad

16  to me, that at age 11 he had a petty larceny.  There were

17  some other matters nolle prossed, but he had 20 hours of

18  community service and had to write a letter of apology to

19  the victim.

20          Then at age 12, he had a receiving stolen goods,

21  and he was committed for juvenile incarceration.  These

22  don't go into the criminal history points, I would note.  He

23  has a criminal history of six, which is the highest criminal

24  history in the federal system.  He is only at this point age

25  32.  So that is sad to the Court.  It's not anything that

1    the Court takes any kind of good feeling for.  It just is

2    sad.

3           Then there is another grand larceny at age 12,

4    assault and battery.  A couple of those were dismissed.

5    There is an escape from custody with force.  All of this is

6    at age 12.  I'm only reading the convictions.  A failure to

7    stop for the police.  These things bother the Court because

8    there has been a continuum here with the current offenses:

9    threats of force, eluding the police.  All of this is a

10   continuum that's been going on for 20 years.

11          So that is bothersome when you look at the history.

12   Then I see an unauthorized use of a motor vehicle at age 12,

13   and then a contempt of court at age 13, oral threats and

14   disorderly conduct at age 15.  Driving without a license and

15   a hit and run.  An eluding the police at age 15.  Again at

16   age 16, driving without a license and reckless driving.

17          Then you move to the adult criminal convictions,

18   because he was being sentenced and charged as an adult at

19   15.  He had grand larceny of a motor vehicle, and all of

20   these, there is so much suspended time.  It concerns the

21   Court that nobody took the time to really incarcerate

22   Mr. Perry and try to get him some rehabilitation, or maybe

23   they did, and it didn't work, but it's not showing in this

24   report.

25          There is his probation being revoked in 2006 and in

```
 1   2007.  There is possession of cocaine at age 16.  This is
 2   when he's been categorized as an adult for adult offenders
 3   at this point.  So he is starting to accumulate at age 15,
 4   but then again, he's only, what, 32 now.  So in the next 17
 5   years he's accumulating, for federal criminal history
 6   purposes, a six.
 7          Then I look, probation being revoked.  There is
 8   possession of cocaine.  Age 16, a contempt of court.  Then
 9   in 2009, felon in possession of a firearm and ammunition in
10   this court.  That was where Judge Jackson had that case.  I
11   believe that's the one that he had.  I did not have it.
12          His supervised release was revoked, and he was sent
13   to the Bureau of Prisons for 18 months.  Then he's released,
14   and now we are up to first his current problems with the
15   Norfolk Circuit Court and then his transfer of the case here
16   for prosecution that has just snowballed.
17          So I can't overlook this very serious criminal
18   history, and a lot of the repetition of what's been going on
19   here, the threats, the eluding the police, the obstruction,
20   all of this, in fact, it's just escalating, and that is what
21   is of concern to the Court.
22          On the other hand, I realize there doesn't appear
23   to have been a lot of rehabilitation, and I'm certainly
24   going to order that.  In many ways he keeps being the
25   architect of his own problems.  It says here that he has had
```

1  a hard time just following the rules.  So I'm not

2  overlooking his history of depression and his problems since

3  he was a very young age.  I think that he needs some

4  treatment for his anger management.  He needs mental health

5  counselling to get over the anger, get help for some of

6  these things, and I'm certainly going to order that.  That

7  is one of the factors that the Court will get to.

8          But looking at this record from all the way through

9  that I've done, I'm very concerned about the nature and

10  circumstances of the current offense *vis-à-vis* his history

11  and characteristics as a defendant, not overlooking the

12  difficulties that he has had.

13          I have to look at the seriousness of this offense,

14  but that goes along with the factor respect for the law and

15  to promote just punishment.  The history here has just been

16  one that has not only shown the seriousness of his offenses

17  because, again, they just kept escalating, and more came

18  through a superseding indictment, and the problems that he's

19  had with the attorneys are all well-documented.  I'm not

20  going to go back and review all of those, but he hasn't

21  shown respect for the law enforcement in these convictions.

22  He hasn't shown respect for officers of this court that we

23  are trying to help him, his attorneys, and at times he's had

24  some pretty vicious outbursts with the Court; namely, a lot

25  with Judge Miller.  There has been profanity used.  The

1    trial of this case was difficult.

2           Finally, and I won't go back through all that,

3    Mr. Perry did have to be removed during the closing

4    arguments, and he was directing remarks and profanity after

5    many warnings at the prosecution and during the trial.  A

6    lot of attorneys.  In any event, he hasn't shown respect for

7    the law, and I don't believe I've ever had a similar case in

8    over 30 years on the bench.

9           I have to look at deterrence.  I do think that

10   Mr. Perry is very intelligent.  He keeps up with the

11   proceedings.  He knows the dates.  He knows the filings.  I

12   do believe that if he puts his mind to it, ultimately, if

13   the sentence is sufficient and not greater than necessary, I

14   always hold out hope, because I think that there are very

15   few defendants that I have had in my career, just very few

16   that didn't have that spark of good.  I think Mr. Perry

17   somewhere there has that spark of good.  He's got to learn

18   to tap it, but I am worried about deterrence given this

19   history and protecting the public because the Court has a

20   duty under these factors to protect the public from further

21   crimes from Mr. Perry.

22          I do have to provide him with any needed

23   educational, vocational, and medical care or other

24   correctional treatment.  I am going to direct that he

25   undergo a full mental health evaluation and receive all

1    appropriate mental health treatment and counselling with a

2    focus on anger management.  He doesn't have a serious drug

3    problem from what I can read in here.  I know he's used

4    drugs, and he had some at one point in time, but I'm going

5    to direct that he participate in a substance abuse treatment

6    and counselling program while he is incarcerated, and if

7    available, in the residential drug treatment program.

8           It doesn't appear that he did get his GED; is that

9    correct, Mr. Noll, at least in my cover sheet?  I know he

10   took some courses, but he dropped out.  I know it's in the

11   PSR somewhere; is that correct?

12          THE PROBATION OFFICER:  That's correct, Your Honor.

13          THE COURT:  So I am going to direct that he obtain

14   his GED and develop a skill while he is incarcerated.  I do

15   waive, while I'm here, the cost of this prosecution,

16   incarceration, and supervised release.

17          I do have to look at all of the kinds of sentences

18   available, and I've indicated that the statutory maximums on

19   count one is ten years; and two, three, four and five is 20;

20   and on count six is 15 days to two years.  I have to look at

21   the guidelines of 168 to 210 months.  I also have to be

22   aware of any victims of the offense.  There is one victim

23   here that was mentioned, but there was no restitution.  I

24   think it was Ms. McCray in the report was mentioned as a

25   victim, but there is no restitution there.  I have to look

1   at all of these factors.

2          THE DEFENDANT:   (Mumbling)

3          THE COURT:   I have to consider all of the

4   arguments.   This is a difficult sentencing for the Court,

5   because, frankly, I don't disagree with anything that the

6   prosecution has argued, but, on the other hand, I am worried

7   about two things.   I'm worried that it is sufficient.   I

8   know it is not going to be greater than necessary.   I am

9   worried about avoiding unwarranted sentencing disparity

10  because I said I've never had this kind of experience with a

11  case, as I don't believe anybody, the attorneys that have

12  been through, rotated through have said it, the prosecutors

13  have said it, but with some trepidation, and I will admit

14  that on the record, I am going to deny the United States'

15  motion for an upward variance.   I'm going to hope that, if

16  Mr. Perry comes out, and he hasn't reformed, then he will be

17  back before either me or another judge of this Court.   I

18  don't know if I'll still be here at that time, but for the

19  supervised release.   I'm going to find that the arguments of

20  the United States, and, frankly, I can't disagree with much

21  of what Mr. Jackson has said, does mandate a sentence at the

22  very top of the guideline range.

23          I'm going to sentence the defendant to the maximum

24  sentence on count one of 120 months and on count two, three,

25  four, and five to 210 months, and on count six to two years.

1   They will all run concurrently.  So that is a total, as I
2   figure it, of 210 months, the top of the guidelines.  It
3   comes out to about 17.  I haven't checked that.  I think
4   it's about 17 and a half years.  It is.

5           I don't calculate these things, but this sentence
6   that I'm giving is consecutive to any other sentence imposed
7   by any other court.  I don't know what matters are out
8   there.  This is a consecutive sentence.  Now, he's been in
9   custody I think almost three years.  So that's up to the
10  Bureau of Prisons.  They know the custody.  It looks like he
11  has been in federal custody since about July 23rd, 2018.  So
12  that's up to the Bureau of Prisons, but he automatically
13  gets credit for any custody in that regard, and when he
14  serves the sentence.

15          Probation is not authorized.  He will be on
16  supervised release for three years on counts one, two,
17  three, four and five; and one year on count six, all to run
18  concurrently.  I don't fine him.  I don't find that he has
19  the ability to pay a fine.  I'll go through all the
20  conditions of supervised release in a moment.  There is no
21  restitution applicable.  There is a $600 special assessment.
22  That's $100 on each count of conviction.  There is no denial
23  of federal benefits because it's not applicable, and it's
24  not recommended on count six, and he would be incarcerated
25  in any event.  So I'm not going to deny the federal

1    benefits.

2         Now, in terms of the presentence report, did you

3    review, Mr. Robinson and Mr. Sams, the presentence report

4    with the defendant?

5         MR. SAMS:  Yes, we did, Your Honor.

6         THE COURT:  You did, too, Mr. Robinson?

7         MR. ROBINSON:  Yes, Your Honor.

8         THE COURT:  I would ask, did you review all of the

9    standard conditions of release with him?

10        MR. SAMS:  Yes, we did talk about them as much as

11   we could.

12        THE COURT:  Your standard conditions of release

13   were included in your presentence report.  Did you review

14   those with your attorney?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you want me to review any of them

17   with you at this time, Mr. Perry?

18        THE DEFENDANT:  No.

19        THE COURT:  The conditions are standard conditions,

20   like keeping in touch with your probation officer.  It's a

21   mode for the Court and the probation officer to keep in

22   touch with you and to be sure that you're on the right track

23   and help you stay on the right track.

24        I would also ask you, and I haven't gotten into any

25   special conditions yet, but there are mandatory conditions,

1    and they were set forth.  For instance, you must not commit

2    another federal, state, or local crime, and you cannot

3    unlawfully possess a controlled substance, and you have to

4    refrain from unlawful use of a controlled substance.  You

5    have to cooperate with the probation officer in

6    administering the programs.  You also have to report

7    within -- let's see.

8              THE DEFENDANT:  72 hours.

9              THE COURT:  Yes.  You're correct.  So you have

10   reviewed all of that, and you have to report within 72

11   hours.

12             Is there anything further, either Mr. Sams or

13   Mr. Robinson, that you want the Court to review with these

14   mandatory conditions and the standard conditions that have

15   been adopted by this Court that were in his presentence

16   report?

17             MR. SAMS:  No, Your Honor.

18             MR. ROBINSON:  No, Your Honor.

19             THE COURT:  Is there anything further you want the

20   Court to review about those standard conditions or the

21   mandatory conditions with you today, Mr. Perry?

22             THE DEFENDANT:  No.  I just want to say I want to

23   note an appeal.  That's it.

24             THE COURT:  I'm going to advise you of that.  When

25   I finish sentencing you, I'm going to advise you of your

```
 1    right to appeal.

 2              THE DEFENDANT:  Yes, ma'am.

 3              THE COURT:  I've also, in terms of any additional

 4    special conditions for the defendant, if he hasn't obtained

 5    his GED or a skill by the time he is released, he will need

 6    to do so while he's on supervised release because there is a

 7    requirement in standard conditions that you be employed.  I

 8    want you to be employed and be in the best situation that

 9    you can be in for your employment.

10              You do have to support any minor children that you

11    may have while you're on supervised release as directed by

12    any social service agency or court of competent

13    jurisdiction.

14              You do have to register with the Department of

15    Child Support Enforcement in any state in which you reside

16    because you do, as abiding by the law, if there has been

17    this order by a Court, you do have to support your minor

18    dependent children.

19              Obviously, if you test positive for a controlled

20    substance, that's a violation of your supervised release,

21    but it would also subject you to be put into a program,

22    either out-patient or residential, at the direction and

23    discretion of the probation officer.

24              You do have to continue to participate in a program

25    as directed, if the probation officer feels it's necessary,
```

1    for mental health treatment, and the cost of any of these

2    programs, any partial costs will be paid as directed by the

3    probation officer.  You do have to waive rights of

4    confidentiality as between you, any healthcare provider, and

5    the probation officer so that any proper programs can be

6    developed, and that communication will enable that to occur.

7           As I said, I've waived the cost of prosecution,

8    incarceration and supervised release, except that you would

9    have to pay partial costs as directed by your probation

10   officer.

11          In terms of any appeal, Mr. Perry, you do have to

12   note your appeal in writing in the clerk's office within 14

13   days of your sentencing.  It would need to be in writing.  I

14   would tell you that if you cannot afford an attorney to

15   represent you, one can be appointed for appeal.

16          So you can also file an appeal for in forma

17   pauperis status, and I would tell you, Mr. Sams and

18   Mr. Robinson, he has indicated today he wishes to appeal, so

19   I would advise you -- I'm not saying what your status is on

20   representation on appeal -- but you should note the appeal

21   of his conviction and sentence because he's indicated that

22   today, and you can put that in writing.  I assume you want

23   the attorneys to note an appeal?

24          THE DEFENDANT:  I mean, figure they know how, but,

25   yeah.

```
 1              THE COURT:  He's indicated that in court so I would
 2    ask that you do that.  Obviously, he remains on indigency
 3    status, as far as the Court knows, and that would be up to
 4    either you all to continue or he can get appointment by the
 5    Fourth Circuit.
 6              MR. ROBINSON:  (Nods head.)
 7              THE COURT:  They handle that appointment.
 8              Is there anything else, Mr. Jackson and
 9    Mr. DePadilla?
10              MR. JACKSON:  Nothing from the government, Your
11    Honor.
12              THE COURT:  I commend you for your patience in this
13    case, and likewise, Mr. Sams and Mr. Robinson, I commend you
14    for your patience in handling of the case.
15              Is there anything else you'd like the Court to
16    consider today?
17              MR. ROBINSON:  No, Your Honor.
18              MR. SAMS:  No, Your Honor.
19              THE COURT:  Is there anything else, Mr. Noll?
20              THE PROBATION OFFICER:  No, Your Honor.
21              THE COURT:  The Court stands in recess until
22    tomorrow.
23              MR. ROBINSON:  Your Honor, before Your Honor goes,
24    for purposes of the appeal, ask the Court to inquire of
25    Mr. Perry as to whether or not he wants the assistance of
```

1    counsel.

2           THE COURT:  I think I did, but you can inquire of

3    him.

4           MR. ROBINSON:  I will.

5           THE COURT:  My duty is to advise him that he has a

6    right to appeal, and that he has a right to appeal, and that

7    it must be in writing within 14 days in the clerk's office,

8    and that he is entitled to an attorney if it's determined

9    that he's indigent for appeal.

10          MR. ROBINSON:  Very well.

11          THE COURT:  The Court stands in recess until Monday

12   morning.

13          (Hearing adjourned at 4:19 p.m.)

14

15                          CERTIFICATION

16

17      I certify that the foregoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20

21          X_____/s/_____x

22                     Jody A. Stewart

23             X_____12-6-2021 _____x

24                        Date

25