```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                       )
 5     UNITED STATES OF AMERICA,       )
                                       )
 6                                     )   CRIMINAL ACTION NO.
       v.                              )   2:18cr113
 7                                     )
       ADONIS MARQUIS PERRY,           )
 8                                     )
            Defendant.                 )
 9   - - - - - - - - - - - - - - - - - -

10

11

12                  TRANSCRIPT OF PROCEEDINGS

13                     Norfolk, Virginia

14                       March 9, 2021

15

16   BEFORE:  THE HONORABLE REBECCA BEACH SMITH
              United States District Judge

17

18

19   APPEARANCES:

20          UNITED STATES ATTORNEY'S OFFICE
            By:  William B. Jackson
21               Randy Stoker
                 Assistant United States Attorney
22               Counsel for the United States

23          TREVOR JARED ROBINSON, ESQ.
            By:  Trevor Robinson
24               Counsel for the Defendant

25
```

```
 1              (Hearing commenced at 2:09 p.m.)

 2              THE CLERK:  In case 2:18cr113, United States of

 3    America versus Adonis Marquis Perry.

 4              Mr. Jackson, Mr. Stoker, is the government ready to

 5    proceed?

 6              MR. JACKSON:  The United States is ready.  Good

 7    afternoon, Your Honor.

 8              THE COURT:  Good afternoon.

 9              THE CLERK:  Mr. Robinson, is the defendant ready to

10    proceed?

11              MR. ROBINSON:  Yes, we are.  Good afternoon.

12              THE COURT:  Good afternoon, Mr. Robinson.

13              Let the record reflect that Mr. Perry is here in

14    person with his counsel, Mr. Robinson.

15              I would first put on the record, as I do in all

16    proceedings, that we are in a COVID courtroom.  It's fully

17    equipped under the CDC standards and the Virginia Department

18    of Health standards.

19              Mr. Stoker, what are you doing?

20              MR. STOKER:  Your Honor, I'm writing down dates of

21    the hearings.

22              THE COURT:  You've been writing for a few minutes.

23    All I'm doing is making some standard introductory remarks.

24    In any event, you've just been concentrating looking down,

25    is somewhat distracting.
```

1      MR. STOKER:  Very well, Your Honor.

2      THE COURT:  You can make notes, but I don't know

3  what you're making notes about when the Court is just simply

4  putting a preliminary statement on the record.  But, in any

5  event, if you want to use your time that way, fine.

6      I do note that the courtroom is fully equipped with

7  the Plexiglas panels, and everyone is socially distanced,

8  and we all have on masks.  We will proceed throughout the

9  proceeding with the social distancing and the masks as much

10 as possible.

11     If you do need to address the Court, so that the

12 court reporter can take the matter down, or you do need to

13 address the Court in a lengthy manner, and you want to take

14 your mask off, you will have to come up to the central

15 podium behind the Plexiglas and do so from there.  You would

16 also need to wipe down the podium and the microphone with

17 the Clorox antiseptic wipes that are there, as well as there

18 is hand sanitizer and a trash can.

19     So throughout the proceeding, if you have a need to

20 address the Court, and you feel that you need to come up

21 behind the Plexiglas and remove your mask, you can, or you

22 can also come up behind the Plexiglas and keep your mask on

23 if you want.  So those are just the preliminary matters that

24 the Court wanted to address.

25     Now I will proceed into the matters that are at

1    hand, and I will review those.  It will take a little bit of

2    time for me to do that.  I'm going to address three matters

3    this afternoon.  We started the hearing, I believe, last

4    Tuesday on March 2nd, and we are continuing it today.  I

5    plan to address three matters at hand.  The first is the

6    speedy trial calculations and where we are with that.

7         The second would be addressing the speedy trial,

8    after that I will address the conflict of interest that has

9    been raised, and with all of that I will also address the

10   setting of a new trial date and the need to set the trial

11   date in conjunction with the alleged conflict of interest

12   and the speedy trial and ends of justice findings.

13        In terms of the speedy trial, I'm just going to

14   summarize those.  The orders are all of record and are in

15   the file.  The bottom line is, as I understand it through

16   calculations by the clerk and by the United States, there

17   were 11 days remaining on the speedy trial clock as of March

18   13, 2020.  That's the day the general order 2020-2 suspended

19   jury trials due to COVID-19.

20        All the orders that I'm citing are on the court's

21   website.  They are cited in the orders that this Court has

22   entered, and they're all in the miscellaneous case number,

23   which I can give you in a moment.  I've got the case number.

24   All the orders that I'm going to refer to are in the

25   miscellaneous case 2:20mc7.  Then all of the orders by the

1   chief judge that control the proceedings throughout the
2   Eastern District of Virginia are entered in that case.  They
3   are also cited and referred to on the court's website where
4   all of the COVID information and general orders can be
5   found.  So that's the miscellaneous governing case that I'm
6   citing to, and I'm only going to cite throughout this the
7   actual order numbers within that case number.
8          As I said, there were 11 days remaining on the
9   speedy trial clock as of March 13th, 2020, the day on which
10  general order 2020-2 was entered in the miscellaneous case
11  number and jury trials were suspended, and that's both civil
12  and criminal jury trials were suspended due to COVID-19.  I
13  would note that civil jury trials remain suspended in the
14  court and have not resumed at any time since the original
15  order suspending the trials was entered on March 13, 2020.
16         Then pursuant to not only general orders 2020-2,
17  but also 2020-7, 2020-12, 2020-16, 2020-19, and this Court's
18  orders, which are ECF Number 151, 155, 158, all of which a
19  time from the March 13th, 2020 up until September 14, 2020,
20  was excluded.  I'll continue on by indicating that all the
21  general orders that I just cited excluded, as I said, the
22  time from March 13, 2020 to September 14, 2020 for the
23  speedy trial clock.
24         Jury trials did resume in this court on September
25  14, 2020.  However, prior to that day, the Court entered an

1    order on July 29, 2020, granting the parties' joint motion

2    to continue, and that was ECF Number 162.  That order

3    contained speedy trial findings and sets a new speedy trial

4    deadline of March 19, 2020.  Thus, all the days from July

5    29, 2020, through October 8, 2020, which is 11 days before

6    the deadline of October 19th, were excluded pursuant to 18

7    United States Code, Section 3161(h)(7)(A).

8             Then prior to the speedy trial clock resuming on

9    October 9th, 2020, the Court entered an order dated October

10   1, 2020, and that really would have been the important

11   orders here, and that's ECF Number 164, and this order

12   contains speedy trial findings and continued the trial until

13   the date on which the Court would be able to schedule the

14   trial, which the Court indicated would be in January of

15   2021.

16             I would note for this record that at that time the

17   Court only had one courtroom equipped for COVID-19

18   proceedings.  That's the courtroom that we are in now.  That

19   courtroom had been booked, as was indicated, all the way up

20   through December, and the first available date would be in

21   January of 2021.

22             Therefore, the time from October 1, 2020 until

23   January 19, 2021, were excluded from the speedy trial

24   calculations pursuant to the Court's October 1, 2020 order.

25   Before the new trial date, general order 2020-22 suspended

1  jury trials from November 16th, 2020 through January 18th,

2  2020.  So in the meantime, trials had to be suspended again.

3  General order 2021-01 contained, and, again, it's in the

4  miscellaneous case, general order 2020-01 continued the

5  suspension of jury trials through February 28, 2020.

6        These general orders all contain speedy trial

7  findings, so all time then from November 16, 2020 through

8  February 28, 2020 were excluded from the speedy trial

9  calculation.

10        On January 27, 2021, the Court set the trial date

11  of March 2nd, 2021, because trials could resume on March 1,

12  2021, and that was the first available date that this

13  courtroom was fully available for any trial, would have been

14  March 1, 2021, and the Court took that first available date

15  for a full trial on March 2nd, 2020, given the calendar

16  throughout the court.

17        Then on February 5, 2021, defense counsel filed a

18  motion to withdraw as attorney.  That was Mr. Daymen

19  Robinson.  The Court held a hearing on the motion on

20  February 23, 2021, and it granted the motion that day.  The

21  time, again, was already excluded from the speedy trial

22  clock, but it would have been excluded from February 5 to

23  February 23rd without the general order, but the general

24  order did not permit anything to go forward before the March

25  1, and this trial date was scheduled for March 2nd.

1           On February 24, 2021, the Court appointed the

2   defendant a new attorney, and the defendant's new counsel

3   filed a motion to continue trial that same day.  The Court

4   granted the motion on February 26, 2021, which was, frankly,

5   still within the exclusion of time under the COVID order

6   2021-1.  In any event, the Court granted it.  The Court did

7   so, as I indicated before, so that a jury would not be

8   scheduled and go to the cost and expense of reporting in

9   when we had new counsel involved.

10          Then we convened last Tuesday to then set a new

11  trial date and for the Court to make ends of justice

12  findings for the new trial date.  At this time, I would go

13  ahead and make those ends of justice rulings.  I'm of the

14  opinion, number one, that 11 days are still left on the

15  speedy trial clock, which would take us until March 11th,

16  and if 11 days aren't left on the speedy trial clock, I

17  would make my finding retroactive to February 26, 2021, when

18  I granted the continuance to new counsel.

19          But one way or the other, it's either retroactive

20  back to the date that new counsel came into the case, or

21  under the calculations that I have received, it would still

22  be 11 days, which would take us to March 11, 2021, and today

23  is March 9, 2021.

24          I would find that the ends of justice are served by

25  granting a continuance of the trial date from March 2nd,

1    2021, on February 26, 2021, and now because the ends of

2    justice here would outweigh the best interest of the public

3    and the defendant in a speedy trial, and that's a quote from

4    outweigh through speedy trial under 18 United States Code

5    Section 3161(h)(7)(A).  I would also cite to *Zedner v.*

6    *United States*, 547 U.S. 489, that's a 2006 case, and *United*

7    *States v. Henry*, 538 F.3d 300.  It's a 2008 Fourth Circuit

8    case.

9         There are four non-exhaustive factors under the

10    Speedy Trial Act that the Court should consider in making

11    this finding, and one such factor is, "Whether the failure

12    to grant such a continuance...would deny counsel for the

13    defendant...the reasonable time necessary for effective

14    preparation," and that is the same statute.  It is under

15    subsection (iv), so it would be Section 3161(h)(7)(B)(iv).

16         I would find that in this case the defendant has

17    not made a waiver on his own in regard to his Sixth

18    Amendment right to counsel, but, consequently, the

19    continuances have been necessitated because of the inability

20    of the defendant and the defense counsel to proceed forward,

21    basically, due to the defendant refusing to cooperate with

22    the attorney, follow the attorney's advice, and/or threaten

23    the attorney with physical threats of violence to the

24    attorney and oftentimes to the family of the attorney.

25         So, consequently, the continuances have been

1    necessitated basically through the defendant's conduct

2    toward the attorneys.  Those findings have all been made on

3    the record.  So, consequently, in order for the defendant,

4    if you're weighing the defendant's right to Sixth Amendment

5    effective counsel, *vis-à-vis* the right to a speedy trial,

6    *vis-à-vis* the COVID situation, the ends of justice for both

7    the defendant and the public, in the Court's opinion, would

8    be served by granting the continuance, which is

9    necessitated.

10           As I indicated, everything was going well, as far

11   as the Court knew, and then Mr. Robinson filed the motion,

12   basically, on the same grounds as we have had repeatedly

13   here, and the Court granted that motion to withdraw with the

14   caveat that this was the last opportunity to have counsel

15   before the Court would then proceed to consider whether the

16   defendant himself had necessitated the loss of the ability

17   to have counsel if he wasn't going to cooperate with

18   counsel, and he was going to threaten them.

19           The Court did not make that finding yet.  The Court

20   has tried to uphold throughout this the defendant's Sixth

21   Amendment right to effective counsel and representation, so,

22   therefore, the continuances were necessary when counsel had

23   to withdraw and new trial dates had to be set.

24           So, consequently, I did conclude, as I indicated

25   earlier, that the ends of justice were served by granting

1    the continuance and setting a new trial date, outweigh the

2    best interest of the public and the defendant in the speedy

3    trial with his effective counsel being a prime consideration

4    under the Speedy Trial Act and for the Court.

5            I would also say that the Court has previously made

6    the ends of justice finding.  I'm reiterating again based

7    upon the necessity for a continuance from the March 2nd

8    trial date.  So the ends of justice finding has been made

9    before.  The COVID orders have all been entered.  Whether

10   there's 11 days left wouldn't run until Thursday, or whether

11   this finding is retroactive to February 26th, the date that

12   the Court granted the continuance for Mr. Robinson as new

13   counsel, the Court makes that ends of justice finding yet

14   again in this case.

15           Having made that finding, the next thing that the

16   Court looks to would be setting a trial date.  But before

17   the Court sets a trial date, the Court will address the

18   conflict of interest issue that came up last Tuesday and

19   that the Court needed time to research and review before

20   moving forward and setting a trial date.

21           At the hearing on March 2nd, Mr. Perry asserted

22   there was a conflict of interest between him and

23   Mr. Robinson.  Mr. Robinson did not move to withdraw because

24   of a conflict of interest and represented to the Court that

25   he had checked with the state bar, and under the state bar's

1    rules of professional responsibility, they did not feel he

2    had a conflict, and he did not feel he had a conflict.  I

3    would also note that those are the rules that are contained

4    and incorporated under this court's local rules for both

5    criminal conflicts of interest and civil conflicts of

6    interest.

7            So Mr. Robinson did not move to withdraw.  It was

8    Mr. Perry who argued to the Court that a conflict existed

9    because Mr. Robinson represented him in a prior state

10   criminal case, and he withdrew from representation in that

11   case.

12           I inquired of Mr. Robinson, or he was forthcoming

13   that, yes, he had withdrawn from a prior state Circuit Court

14   case in Norfolk, and I asked for the name of that case.

15   It's the Circuit Court case of *Commonwealth versus Perry*.

16   It's criminal number 160-00345.

17           As I indicated, Mr. Robinson acknowledged that he

18   withdrew from his prior representation of Mr. Perry because

19   Mr. Perry had made threats against him, but that he agreed

20   to represent him now in the instant matter and held no

21   animus in regard to Mr. Perry and asserted that from his

22   standpoint no conflict existed, and, again, he had checked

23   that with the state bar.

24           The United States agreed with that position, that

25   it was not a conflict of interest.  In the meantime, over

1    the last week, I did access the Norfolk Circuit Court's

2    docket in this matter, and I would note that Mr. Robinson

3    withdrew, and I believe there was a Mr. Anderson, I think

4    that was the name, I don't have it in front of me, that

5    represented Mr. Perry before Mr. Robinson, and that they had

6    both withdrawn.  It's just withdrawal orders.  It's not

7    clear to me on the record, and we'll look at that and get it

8    on the record here in a moment.

9          The Court then noted that there was one attorney

10   who had continued to represent Mr. Perry, it was Thomas

11   Reid, and that Mr. Perry had entered a guilty plea in that

12   case, and Mr. Reid was counsel for the plea and for

13   sentencing.  I would note that Mr. Reid is not on our court

14   appointed list here in the federal court, because that was

15   the first thing I thought, well, if Mr. Reid may satisfy the

16   defendant.

17         So, in any event, I would note that Mr. Reid is not

18   a member of the federal CJA, that is the Criminal Justice

19   Act panel before the Court.  I also researched the law, and

20   there was no case, I'm not saying that there was no case out

21   there, but there was no case out there that I could find

22   that said that someone who had withdrawn from representation

23   in a prior case could not represent someone in a later

24   subsequent case if the conflict no longer existed in the

25   current case.

1           The Rules of Professional Responsibility read that
2    a conflict of interest exists if, "There is significant risk
3    that the representation of one or more clients will be
4    materially limited by the lawyer's responsibility to another
5    client, a former client or a third person or by a personal
6    interest of the lawyer."  That's quoted from Virginia Rules
7    of Professional Conduct 1.7(a).  Under this -- I'm going to
8    call on you in a minute, Mr. Perry.
9           Under this rule and under the case law that the
10   Court has not been able to find, the Court would not find an
11   actual conflict of interest based upon what it knows at this
12   point in time.  I would ask you again, Mr. Robinson, as an
13   officer of the court, what was the conflict before?  It was
14   a couple of years ago, I guess what, four years ago?  Was it
15   2016?
16           MR. ROBINSON:  It was, Judge.
17           THE COURT:  Can you just on the record again say
18   what that conflict was and the basis for your opinion that
19   it doesn't affect anything in this case.
20           MR. ROBINSON:  Well, Judge, the best of my
21   recollection, in viewing the attending transcripts from the
22   last hearing that I attended with Mr. Perry in the Norfolk
23   Circuit Court, he had made a threat to me while in the
24   courtroom.  I think his words were, "Do I have to fuck him
25   up or something," something to that effect, Judge.  I

1    subsequently withdrew after that statement.  He was then

2    appointed Mr. Reid.

3            THE COURT:  All right.  So it was a statement in

4    court?

5            MR. ROBINSON:  Yes, Judge.  I believe he also made

6    a statement to me while in the lockup after stating that.

7            THE COURT:  Then I would ask you, you do not hold

8    animus, as you've indicated, towards Mr. Perry or feel there

9    is a conflict here?

10           MR. ROBINSON:  No, Judge.

11           THE COURT:  The way that I'm going to handle this

12   particular situation, given that Mr. Perry has not made a

13   waiver of his Sixth Amendment right to counsel and has

14   indicated that he wants counsel, and given that there is not

15   an actual conflict that is before the Court, and the Court

16   has made the appropriate inquiries under the case law, under

17   *Mickens v. Taylor*, that's 240 F.3d 348, 355, it's a 2001

18   Fourth Circuit case, and it was affirmed by the United

19   States Supreme Court 535-162 at 122, that's a 2002 Supreme

20   Court case, the Fourth Circuit's case was an *en banc*, and

21   the Fourth Circuit quoted, "A trial court must inquire into

22   a conflict of interest when it knows or reasonably should

23   know that a particular conflict exists," and that's at Page

24   358, and it cites *Cuyler v. Sullivan*, which is 446 U.S. 335

25   at 347.  It's a 1980 case.

1          The Court has reviewed the Norfolk Circuit Court

2     record.  Mr. Robinson is an officer of the Court and has

3     made these representations, and Mr. Perry has not waived his

4     right to counsel.

5          So, consequently, what I am proposing that we will

6     do is that I do not find an actual conflict of interest

7     exists, and I will not relieve Mr. Robinson of his

8     representation at this time.  However, I am going to appoint

9     co-counsel in this matter so that a trial date can be set

10    under co-counsel's schedule and Mr. Robinson's schedule, and

11    if history repeats itself, and the co-counsel, for some

12    reason, finds a need to withdraw, Mr. Robinson has been the

13    first attorney that has not found the need to withdraw

14    because of Mr. Perry's conduct in this case, and so,

15    consequently, I'm going to leave him in the case as

16    co-counsel.  I'm going to appoint a new attorney, and

17    Mr. Robinson and that new attorney can set a trial date with

18    the Court.

19          If either one of them then has to withdraw, the

20    Court will proceed to find out if either one or both, as a

21    result of that representation, find that it is necessary to

22    withdraw, and the Court finds that it is due to Mr. Perry's

23    conduct, then we will move to the next step of proceeding

24    whether or not he has waived his right to counsel.

25          THE DEFENDANT:  We can do that now.

1          THE COURT:  If the other attorney withdraws, and
2     Mr. Robinson is here, then Mr. Robinson can be standby
3     counsel for the defendant.
4          So basically I'm trying to develop a contingency
5     plan here such that there is new counsel, and Mr. Robinson
6     and the new counsel should proceed with the trial date.  If
7     it's necessary for a withdrawal of counsel during this time
8     period, then there is a counsel left to go to trial or to be
9     standby counsel.
10          So that's what I would propose.  I would ask the
11     United States to weigh in with an opinion on that proposal.
12          MR. JACKSON:  Your Honor, the United States agrees
13     with that proposal.
14          THE COURT:  So, in other words, finding no actual
15     conflict of Mr. Robinson, he remains in the case, but
16     co-counsel will be appointed, a trial date will be set with
17     Mr. Robinson and with co-counsel, and depending upon what
18     occurs during that period, the Court will go forward with
19     one or both counsel at trial or one counsel at trial or both
20     or by standby counsel.  That gives two attorneys for the
21     defendant.
22          MR. JACKSON:  Yes, Your Honor.
23          THE COURT:  Mr. Robinson, you can react to the
24     Court's proposal and add anything that you want.
25          MR. ROBINSON:  I do not object to the Court's

1    proposal, Judge.

2            THE DEFENDANT:  (Cross-talk).

3            THE COURT:  What I will do, Mr. Robinson, is I

4    will, again, there are not a lot of attorneys left on our

5    court appointed list, and I'm going have to check with each

6    one of them now as to whether they will represent Mr. Perry.

7            THE DEFENDANT:  I want (cross-talk).

8            THE COURT:  Once that appointment is made, and

9    you'll see it and get the order of appointment, if the two

10   of you would contact the courtroom deputy, and in

11   conjunction with Mr. Jackson.  Is Mr. DePadilla still in the

12   case?

13           MR. JACKSON:  Yes, Your Honor.

14           THE COURT:  Is Mr. Stoker going to be at trial?

15           MR. JACKSON:  No.  It's just myself and

16   Mr. DePadilla.

17           THE COURT:  Whoever is going to be at trial, go

18   ahead and set the date with the clerk.  I will set it as

19   soon as possible given the attorneys' schedules, given the

20   Court's schedule.  I say the Court's schedule, I'm talking

21   about the availability of a courtroom.  We do now have two

22   COVID courtrooms, but, frankly, we have been scheduling

23   trials, they are pretty much back to back, and sometimes we

24   have more than we can accommodate, and we may have to move a

25   trial even over to Newport News.

1          So, however, the Newport News courthouse is also

2     pretty well booked.  So we only have one courtroom in

3     Newport News, and we have two courtrooms in this court.

4     Again, under the courtroom restrictions and the COVID

5     restrictions and the necessity for counsel to have adequate

6     preparation and given the need for the continuances and the

7     interest of justice finding by the Court, the clerk will

8     check with me, and we have a central system now even of

9     setting trial dates, so we will go into the central system,

10    and we will take the best available trial date that we can

11    arrange.

12         I would also note, as I said earlier, civil jury

13    trials have not begun, and, obviously, the criminal trials

14    will take precedent over those.

15         Mr. Perry, what is it that you want to say?

16         THE DEFENDANT:  I would like to note that I -- I

17    would like the motion to be placed on the record right here,

18    this motion to withdraw.  Last week when I came here, he

19    told me to take --

20         THE COURT:  Maybe it would be better, Mr. Perry, if

21    you sat down and turned on the microphone.  The court

22    reporter can't hear you through the Plexiglas and your mask.

23         THE DEFENDANT:  Mr. Trevor Robinson told me last

24    week when we were here to take this matter up with the bar

25    association.  I would like -- I would like this motion to

1    withdraw for Mr. Trevor Robinson be filed with the clerk of
2    the courts.  I asked that last week when we was here, and so
3    that it could be a record of this.  I have wrote -- I have
4    contacted the bar, and I'm waiting.  I sent a copy of all
5    these documents, as well as Mr. Trevor Robinson corresponded
6    letter with me dated from March the 3rd, 2021, and I just --
7    I just want this all to be on record, even his motion to
8    withdraw, I would like that to be noted on the record.
9           I would like that to be noted on the record, like
10   when I tried to hand it to you the other day to have it
11   filed with the clerk of court so that his action -- this
12   actual document will be up there.
13          THE COURT:  Let me do two things, Mr. Perry.  First
14   of all, you look at what you want on the record.  You can
15   pass it up to the Court.  I will look at it.  I will check
16   with counsel, and I will admit it as -- we will just call
17   them Court exhibits.  I'll just call them Perry Court
18   Hearing exhibits.  Then if you get a contrary opinion from
19   the bar.
20          THE DEFENDANT:  Yes, ma'am.
21          THE COURT:  Mr. Robinson has gotten, then you send
22   it to the Court, and we will reconvene.
23          THE DEFENDANT:  Yes, ma'am.
24          THE COURT:  But I can't go on anything other than
25   the representations that I've received.

```
1            THE DEFENDANT:  I understand.

2            MR. ROBINSON:  Judge, for the record, I haven't

3    filed any motion to withdraw.  I'm assuming he may have

4    drafted his own motion.

5            THE DEFENDANT:  Your signature.

6            MR. ROBINSON:  Excuse me, I'm talking.  Judge, with

7    regard to the prior -- with regard to the letter he alluded

8    to, my letter to him March 3rd, 2021, that was a privileged

9    communication.  I understand he wants it now part of the

10   court record.  I would certainly advise him against it.

11           THE COURT:  Well, if it's attorney-client --

12           THE DEFENDANT:  Hold on.  Under oath right now I

13   want you to say is that document fake?  So you are saying

14   that that document right there is fake with your signature

15   on it?

16           MR. ROBINSON:  I don't have a signature.

17           THE DEFENDANT:  It is definitely not fake.  It's

18   the real deal.

19           THE COURT:  This is the document that I saw last

20   week, and it's a public document.  All it is, is a motion to

21   withdraw in Commonwealth versus Perry in the Circuit Court

22   of the City of Norfolk, case number criminal 16-345, and

23   it's basically just a public document that's there.  It's

24   just the motion to withdraw.  It's one paragraph.

25           Let me pass this document to Mr. Robinson.  Is this
```

1   what you are talking about is not a public record?  I know I

2   saw it last week, and I deemed the motions that Mr. Perry

3   filed in that case.

4          MR. ROBINSON:  Judge, this appears to be a motion

5   that I filed in connection with the case pending in Norfolk

6   Circuit Court back in 2016.

7          THE COURT:  So is there any reason for the Court to

8   place it under seal now?

9          MR. ROBINSON:  No, Judge.  I was referring to --

10  I'll say this, generally.  Mr. Perry referred to a motion.

11         THE COURT:  Speak into the microphone so we can

12  hear you.

13         MR. ROBINSON:  Your Honor, my client referred to my

14  letter to him dated March 3rd, 2021, which I thought he was

15  submitting to the Court for an exhibit.  That is what I was

16  objecting to.  I don't object to this.

17         THE DEFENDANT:  How you going to object to this

18  letter being up there?  There is no case right in here.  It

19  is nothing.  If that's the case, half the record they put on

20  the record anyway, we should have had an ex parte hearing.

21  Nothing should have been on the record.  Come on, man.  Come

22  on, man.

23         THE COURT:  This motion to withdraw as counsel, I'm

24  going to make it Court Hearing Exhibit Number 1.  It's the

25  same motion that was passed up last week upon which I then

1    proceeded with the case number.

2              So, Madam Clerk, this is Court Hearing Exhibit

3    Number 1 for today.

4              (Court Exhibit 1 received in evidence.)

5              THE COURT:  I have admitted the exhibit, Mr. Perry.

6    You said you have contacted the state bar?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Well, if you get an opinion back from

9    them, would you forward it to the Court --

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  -- or have them forward it to the

12   Court?

13             THE DEFENDANT:  Whichever way.  However you want to

14   do it.

15             THE COURT:  You get it, you can send it to the

16   Court, or you can ask them.

17             THE DEFENDANT:  The jail that I'm in, they don't

18   allow us to make copies.  We have to, like, go through our

19   attorneys or whatever to make copies for us.  So that -- I

20   don't know how that's going to work out as far as me getting

21   a copy of it.

22             THE COURT:  Well, if you get a response from the

23   Virginia State Bar, if you can, you can ask them to send it

24   to me, and if they can't do it, you send it, and we will

25   copy it and give a copy back to you.

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  So, in other words, you won't be

3    deprived of a copy.  Either have the Virginia State Bar send

4    it to the Court directly to me, Judge Rebecca Beach Smith.

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Then if they can't do that, because it

7    could be that they can only respond to the person asking the

8    question, don't know their rules in that regard, you can

9    send it to the Court, and I promise you I will see that you

10   get a copy of that back, whatever it is.

11         THE DEFENDANT:  Yes, ma'am.  He stated in his

12   letter that he contacted the state bar himself.  When you

13   contact the state bar, when they correspond with you, they

14   give you a case number.  I would like to have the case

15   number from his correspondence with the bar.  I asked for

16   it.

17         When I made my inquiry, I asked for the actual

18   number because anytime that somebody contact the bar about

19   their lawyer or the lawyer contacting the bar, this is --

20   usually they make a copy, or they contact the person who

21   the -- the opposite person from the inquire.  But at this

22   point, I don't know what might happen.  I'd just, like I

23   say --

24         THE COURT:  As I say, at this juncture, what I have

25   is Mr. Robinson's representation what I understand to be the

1    rules and the lack of case law.  If you contact the bar, as

2    I said, I don't know whether they will send the Court a copy

3    or not.  But you certainly, on your own, can do that and get

4    an opinion, and you can share it with the Court.  The Court

5    promises you that it will give you a copy of that back.  I

6    may also have to share it with counsel if it comes through.

7    But that will be the decision that will be made when you

8    receive a response from the state bar.

9          Now, Mr. Robinson, is there anything you want to

10   add?

11         MR. ROBINSON:  Just to satisfy his curiosity, Your

12   Honor, on February the 25th, 2021, I sent an e-mail to the

13   Virginia State Bar ethics hot-line.  I indicated to them

14   that years ago I was appointed in the Norfolk Circuit Court

15   to represent client, I withdrew from representing client as

16   he threatened me with violence.  I have now been appointed

17   in the Federal Court.  Client has been expressly clear that

18   he will refuse to work with me as he has refused to work

19   with five prior attorneys.  Am I required to withdraw or am

20   I at my own discretion to continue with the appointment?

21         The response was from Mr. Seth Guggenheim that I'm

22   not required to move to leave to withdraw if I believe I can

23   provide competent and diligent services to the client

24   despite the obstacles he has placing in your way.  Best

25   regards.

```
 1              THE DEFENDANT:  You said who was that response
 2     from?
 3              THE COURT:  Mr. Robinson, if you would pass that up
 4     to the Court, and I'm going to make some copies.  Let me see
 5     it.  I want to make this Court Hearing Exhibit Number 2.
 6              MR. ROBINSON:  Very well, Judge.
 7              (Court Exhibit 2 received in evidence.)
 8              THE COURT:  First of all, I'm going to give the
 9     original and a copy to Mr. Robinson, his original back and a
10     copy.  I'm going to give a copy to Mr. Jackson and a copy
11     for the clerk to mark as admitted as Court Hearing Exhibit
12     Number 2.
13              Mr. Robinson, I will leave it up to you as to
14     whether you share the inquiry with Mr. Perry as his
15     attorney.  That's why I made a copy.  Mr. Perry has a copy,
16     Mr. Jackson has a copy, and a copy has been admitted into
17     evidence.  Mr. Robinson has his original.
18              If there is nothing further to be handled today,
19     the Court will proceed as it has indicated.
20              THE DEFENDANT:  Your Honor, may I have my document
21     back?
22              THE COURT:  Yes.  We will make a copy of it.  Can
23     you hand it to me.
24              Here is the original to go back to Mr. Perry, and
25     here is a copy for the clerk to mark for Court Exhibit 1 for
```

1    this hearing, here is a copy for Mr. Robinson, and here is a

2    copy for Mr. Jackson.  So everyone either has the original

3    or a copy of both exhibits that have been admitted into

4    evidence.

5            Following the hearing, again, I will proceed with

6    what I indicated.  I'll do a summary order of the

7    proceedings here for memorializing in a short order the

8    speedy trial finding that was made.  I'm not going to go

9    through in the detail that I did here but that it was made

10   for the reasons on the bench.

11           I will go through that co-counsel is being

12   appointed to proceed in the case for the reasons stated from

13   the bench, and, likewise, direct all counsel to contact the

14   clerk forthwith to set a continued trial date, and it will

15   be set as giving the attorney time to prepare and upon the

16   Court's availability of court cases.

17           The Court stands in recess until tomorrow.

18           (Hearing adjourned at 3:15 p.m.)

19

20

21

22

23

24

25

JODY A. STEWART, Official Court Reporter

```
1                         CERTIFICATION

2

3        I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7              X_____/s/_____x

8                         Jody A. Stewart

9                   X_____5-10-2022 _____x

10                             Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JODY A. STEWART, Official Court Reporter